# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Joseph L. McDonald, Mavis A.**
**McDonald and Lyndon Ellis,**

        **Plaintiffs,**

**v.**                            **Case No. 08-2473-JWL**

**Kellogg Company,**

        **Defendant.**

## <u>MEMORANDUM & ORDER</u>

Plaintiffs, individually and on behalf of others similarly situated, filed this wage and hour suit against defendant alleging violations of the overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. Specifically, plaintiffs, all current or former hourly production employees at defendant's bakery facility in Kansas City, Kansas, allege that defendant failed to compensate them for time spent performing activities such as donning and doffing required uniforms and gear; gathering required materials, tools and equipment; and post-donning and pre-doffing walking to and from work stations. The parties stipulated to conditional certification and notice to the putative collective class and further agreed to a bifurcated discovery process limiting the first stage of discovery to issues relating to defendant's contention that an application of section 203(o) of the FLSA mandates summary judgment in favor of defendant on all claims. The first phase of discovery has now closed and the parties have now filed cross-motions for summary judgment regarding the application of section 203(o).[1] As will

---

[1]In their submissions, plaintiffs seek a ruling that not only does section 203(o) not preclude compensation for their donning and doffing activities but also that those activities

be explained, both motions are granted in part and denied in part.

## I.    Facts

Since 2001, defendant Kellogg Company has owned and operated a bakery facility in Kansas City, Kansas.  Prior to that time, the facility was owned and operated by the Keebler Company.  At all times pertinent to this lawsuit, hourly production employees at the bakery facility have been represented by Local 184-L Retail, Wholesale & Department Store Union.  Named plaintiffs Joseph McDonald, Mavis McDonald and Lyndon Ellis are all hourly production employees at the bakery facility in Kansas City, Kansas.

Hourly production employees at the facility work in one of five departments–Bake Shop, Production, Sanitation, Maintenance or Shipping and Receiving.  Regardless of the department in which an employee works, all employees are required to wear a company-issued uniform consisting of a shirt, pants and shoes.  Based on personal preferences, an employee may choose to wear a smock or jacket for added warmth.  An employee is permitted to change into his or her uniform at home prior to coming to the facility or may utilize company locker rooms to change into his or her uniform prior to the start of his or her shift.  The vast majority of employees change into their uniforms in the locker rooms at the facility, where Kellogg maintains clean uniforms for its employees in each employee's locker.

---

are, in fact, compensable.  It is undisputed, however, that other issues (primarily, whether the time spent performing such activities is *de minimus*) that have not yet been addressed by the parties may affect any ultimate ruling on the compensability of such activities.  In this order, the, the court declines to state as a matter of law that such activities are compensable.

In addition to the company-issued uniform, all hourly production employees are required to wear certain company-issued accessories, including hair nets, ear plugs and safety glasses. If applicable, employees are also required to wear beard guards. Hair nets, ear plugs and beard guards are maintained in dispensers just outside the locker rooms and just outside work areas so that employees typically obtain these items after leaving the locker room while walking to their work areas. For those employees who change into their uniforms at the facility, safety glasses are maintained in the employees' lockers such that glasses, in addition to the uniform, are donned in the locker room prior to the start of the employees' shifts.

A handful of other items are maintained in employees' lockers but are not common to all employees. Certain machine operators and certain maintenance and sanitation employees are required to wear "bump caps," and those bump caps are maintained in the employees' lockers and donned in the locker room prior to the start of the employees' shifts. For those employees whose jobs require them to utilize scrapers (all employees in the sanitation department) or cutting tools (the "cheese grinder" position in the bake shop), those items are maintained in the employees' lockers and are obtained by those employees prior to the start of the employees' shifts. Finally, certain machine operators maintain their tool boxes in their lockers and, thus, obtain those tool boxes prior to the start of their shifts.

Prior to the start of an employee's shift, then, each and every hourly production employee dons (either at home or, more likely, in a company locker room) a company-issued shirt, a smock or jacket depending on personal preference, pants, work shoes and safety glasses. Depending on the employee's position, an employee may also obtain from his or her locker a bump cap,

3

scraper, cutting tool and/or tool box.  At that point, all hourly production employees exit the locker rooms and, on the way to their designated work areas on the production floor, obtain hair nets, ear plugs and, if applicable, beard guards from dispensers located on the way to each work area.

Once an hourly production employee reaches his or her designated work area, the employee "clocks in" utilizing employee time clocks that are located outside each work area. Employees, however, are not compensated beginning at the time they "clock in."  Rather, defendant pays its hourly production employees on a "gang time" or "shift time" basis.  By way of example, if the morning shift begins at 6:00a.m., then the employees working the morning shift are paid beginning at 6:00am regardless of whether an individual employee clocked in at 5:52a.m. or 6:03 a.m.  Indeed, the record reflects that so long as employees clock in no more than 12 minutes prior to the start of a shift (and, to create a cushion, defendant instructs its employees not to clock in more than 10 minutes prior to the start of a shift), those minutes are automatically rounded away by defendant's timekeeping system.  Thus, hourly production employees are not compensated for many activities that occur prior to the start of their actual shift time, including time spent changing into uniforms; gathering or putting on additional items that may be kept in an employee's locker such as bump caps or tools; walking from the locker rooms to the production floor; obtaining and donning ear plugs, hair nets and beard guards; and donning and obtaining gear and tools maintained on the production floor.

In any event, after an employee "clocks in" but prior to the start of his or her particular shift, the employee may be required to don additional gear or gather additional tools or

4

equipment at the employee's work area depending on the employee's job. In the bake shop, for example, the head mixer dons an apron at his or her work station while other employees in the bake shop might be required to don reflective safety vests. All employees in the shipping and receiving department don reflective safety vests at their work areas. Sanitation and/or maintenance employees may be required to don reflective safety vests, rubber boots, face shields, smocks and rubber gloves at their work stations. When a sanitation employee is assigned a task relating to the flour silo, that employee is required to wear a fall harness. Many employees gather–at their work areas prior to the start of their shifts–additional tools and equipment related to their particular jobs. Employees in shipping and receiving, for example, ready their forklifts and sanitation and maintenance employees might gather mops, rags, paintbrushes, paint stirrers and/or tool boxes.

At the end of the employees' shifts, employees remove and return whatever gear and tools they have obtained from their work areas, clock out and, as employees walk back to the locker rooms, they place their ear plugs, hair nets and beard guards in bins designated for those soiled items. Once the employees reach the locker rooms (assuming they change out of their uniforms at work), they change out of their uniforms and leave their safety glasses and any other items (e.g., bump cap, scraper) in their lockers. Again, because defendant pays its hourly production employees on a "shift time" basis, these employees are not compensated for the time spent after the end of a shift, including time spent removing and returning gear and tools obtained on the production floor; removing and returning ear plugs, hair nets and beard guards; walking to the locker rooms; changing out of uniforms; and removing and returning items to lockers such as

5

bump caps or tools.

Until the filing of this lawsuit, defendant's practice (and, before it, Keebler's long-standing practice) of not compensating hourly production employees for time spent donning and doffing required uniforms and gear; gathering required materials, tools and equipment; and traveling to and from work areas has never been challenged by a union grievance or any other mechanism. The collective bargaining agreement presently in place, executed in March 2008, does not address the issue in any respect and no prior agreements have addressed the issue. Indeed, it is uncontroverted that the issue has never been raised in any fashion during union-management negotiations and there is no evidence that Local 184-L ever discussed or even considered seeking compensation for these activities.

## II.     Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[2]  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).  An issue is "genuine" if "there is

---

[2]The legal standard does not change if the parties file cross-motions for summary judgment. Each party has the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law. *Atlantic Richfield Co. v. Farm Cr. Bank*, 226 F.3d 1138, 1148 (10th Cir.2000).

sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.  *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant. *Id.* (citing Fed. R. Civ. P. 56(e)).  To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."  *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III.    Applicability of Section 203(o)

The FLSA requires covered employers to pay eligible employees an overtime wage for hours worked in excess of forty hours per week. *See Clements v. Serco, Inc.*, 530 F.3d 1224, 1230 (10th Cir. 2008) (citing 29 U.S.C. § 207(a)(1)). Section 203(o), however, provides a specific exclusion from the calculation of "hours worked" for time spent changing clothes if such time has been excluded by custom or practice under a bona fide collective bargaining agreement:

> Hours Worked.–In determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.

29 U.S.C. § 203(o). The primary issues before the court on the parties' summary judgment submissions, then, are whether and to what extent defendant's hourly production employees are "changing clothes" and, if so, whether time spent changing clothes has been excluded by a custom or practice under a bona fide collective bargaining agreement.[3]

*A.    Applicable Standard and Burden of Proof*

---

[3]For the first time in their reply brief, defendant moves for summary judgment on the grounds that its hourly production employees have the option of changing clothes at home and, accordingly, such activity is not compensable work pursuant to certain Department of Labor interpretative regulations. Curiously, in its opening brief, defendant expressly declined to move for summary judgment on this basis and reserved the issue for briefing at the close of merits-based discovery. That issue, then, is not properly before the court at this juncture.

Before reaching those issues, the parties debate the threshold issue of whether section 203(o) is an exemption under the FLSA or, rather, a definition that operates to limit the scope of the FLSA. According to plaintiffs, section 203(o) is an exemption that constitutes an affirmative defense on which defendant has the burden of proof and requires a narrow construction against defendant. Defendant, on the other hand, argues that section 203(o) is an exclusion, a provision that operates to exclude from measured working time any time spent changing clothes as described in the provision, such that plaintiffs bear the burden of persuasion on the applicability of the provision.

The Ninth Circuit Court of Appeals, in *Alvarez v. IBP, Inc.*, 339 F.3d 894, 905 (9th Cir. 2003), summarily concluded that section 203(o) constitutes an "exemption" from the FLSA and, accordingly, an affirmative defense on which the defendant bears the burden of proof. No other Circuit Court has so held.[4] More recently, the Sixth, Fifth and Eleventh Circuits have squarely analyzed the issue and have rejected the conclusion that section 203(o) is an exemption. In *Allen v. McWane*, 593 F.3d 449 (5th Cir. 2010), the Fifth Circuit analyzed the issue as follows:

The statute, however, demonstrates that § 203 is a list of definitions and

---

[4]Admittedly, numerous district courts have labeled section 203(o) as an exemption or an affirmative defense. None of these courts, however, have actually analyzed the issue; rather, these courts have simply assumed or conclusorily asserted that section 203(o) was an exemption. *See, e.g., Kassa v. Kerry, Inc.*,487 F. Supp. 2d 1063. 1071 (D. Minn. 2007) (referring to section 203(o) as a "defense" that must be established by defendant); *Johnson v. Koch Foods, Inc.*, 670 F. Supp. 2d 657, 664 (E.D. Tenn. 2009) (same); *Sandifer v. U.S. Steel Corp.*, 2009 WL 3430222, at *4 (N.D. Ind. Oct. 15, 2009) (placing burden on defendant to establish that time spent changing clothes should be excluded from compensation under section 203(o)); *Figas v. Horsehead Corp.*, 2008 WL 4170043, at *12 (W.D. Pa. Sept. 3, 2008) (relying on *Kassa* and stating that section 203(o) is an affirmative defense).

subsection (*o*) addresses how to define and calculate "hours worked," in contrast to § 213, which is titled "Exemptions," 29 U.S.C. § 203(*o*). In addition, the "exemptions" the Supreme Court [in cases indicating that exemptions are to be narrowly construed against the employer] refers to as affirmative defenses to the FLSA all "relate to the total exclusion of a particular worker or workers from certain FLSA protections," not "to the exclusion of only some *activities* from the FLSA."

*Id.* at 458 (citations and quotations omitted). The Fifth Circuit, in concluding that the plaintiff had the burden of proof as to the application of section 203(o), also relied on the Eleventh Circuit's critique in *Anderson v. Cagle's*, 488 F.3d 945, 957 (11th Cir. 2007), of the Ninth Circuit's *Alvarez* decision:

The *Anderson* court noted that all the cases on which the Ninth Circuit relied concerned § 213 of the FLSA, which is titled "Exemptions." The court further observed that "had Congress sought to bestow upon § 203(o) the same status as the exemptions set forth in 213, it easily could have amended § 213 instead of § 203, which is titled, not coincidentally, "Definitions."

*Id.* The *Anderson* court also supported its conclusion with "the circumstances surrounding passage of the provision that became 203(o)," explaining that the provision was one of several efforts by Congress to curtail "employee-protective interpretations of the FLSA" and "to strengthen the employer-protective Portal-to-Portal Act." 488 F.3d at 957-58. As stated by the Eleventh Circuit, then, "construing § 203(*o*) narrowly against employers as an FLSA 'exemption' contravenes not only basic tenets of statutory construction but also the readily apparent intent of the legislators who approved the amendment's language." *Id.* at 958; *accord Franklin v. Kellogg Co.*, ___ F.3d ___, 2010 WL 3396843, at *4 (6th Cir. Aug. 31, 2010) (agreeing with "the majority of our sister circuits").

Plaintiffs urge that the Tenth Circuit, in *Nichols v. Hurley*, 921 F.2d 1101 (10th Cir.

1990), described as an "exemption" the "personal staff" exception to the FLSA's definition of a covered employee in section 203(e). *Id.* at 1103. According to plaintiffs, then, the mere fact that section 203(o) appears in the definitional section of the FLSA (rather than section 213) is not dispositive of whether section 203(o) constitutes an exemption. The court agrees that Congress's failure to include the substance of section 203(o) as an exemption within section 213 is not dispositive of whether section 203(o) should be treated as an exemption. Rather, the persuasive opinions decline to treat section 203(o) as an exemption not only because it appears in the definitional section of the FLSA, but also because the legislative history of the provision supports that conclusion and, unlike the personal staff "exemption" found in section 203(e) that concerns the total exclusion of particular workers from the FLSA's protections, section 203(o) excludes only certain activities from the FLSA. The court, then, does not believe that *Nichols* mandates a different result here.

For the foregoing reasons, the court believes that the Tenth Circuit, if faced with the issue, would agree with the reasoning and conclusions in *McWane* and *Anderson* and decline to treat section 203(o) as an exemption. Plaintiffs, then, bear the burden of persuasion on whether section 203(o) applies in this case. *See Turner v. City of Philadelphia*, 262 F.3d 222, 225-26 (3d Cir. 2001) (placing burden of persuasion on plaintiffs as to whether custom or practice existed under 203(o)) ; *Salazar v. Butterball, LLC*, 2010 WL 965353, at *3 (D. Colo. Mar. 15, 2010) (declining to narrowly construe section 203(o) as an exemption).[5]

---

[5]Plaintiffs also argue that even if the court declines to treat section 203(o) as an exemption, it should nonetheless narrowly construe that provision because the FLSA is a

*B.      Changing Clothes*

Section 203(o) excludes from compensable work any time spent "changing clothes" if such time has been excluded by custom or practice under a bona fide collective bargaining agreement.  The court, then, must determine whether and to what extent plaintiffs' donning and doffing activities constitute "changing clothes" within the meaning of section 203(o).  As an initial matter, plaintiffs candidly concede that their pants, shirts and shoes "fall well within the accepted definitions of clothes under section 203(o)."  Plaintiffs, then, do not contest that their basic uniforms (pants, shirt, shoes) are "clothes" within the meaning of section 203(o) and the court need not resolve that issue.

The court can also readily dispose of the parties' arguments concerning what the court calls, for ease of reference, plaintiffs' "department equipment," that is, the numerous items that plaintiffs obtain on the production floor after they have clocked in, including but not limited to reflective safety vests, rubber boots, face shields, smocks and/or  rubber gloves.  In their submissions, plaintiffs contend that these items are clearly not "clothes" within the meaning of section 203(o).  Defendant does not dispute that conclusion (so the court need not resolve that issue), but argues instead that because such items are obtained after plaintiffs' clock in for their shifts, defendant already compensates plaintiffs for the collection of such items.  But the

_____

"pro-employee" statute.  But given the legislative history of section 203(o) as described in *Anderson*, plaintiff's "broad remedial purpose" argument does not apply to section 203(o). *See Andrako v. U.S. Steel Corp.*, 632 F. Supp. 2d 398, 410 n.9 (W.D. Pa. 2009) (declining to narrowly construe section 203(o) and rejecting argument that "broad remedial purpose" of FLSA applies to section 203(o)).

evidence in this case, at a minimum, reflects a factual issue as to whether plaintiffs are compensated for that time. It is undisputed that defendant's hourly production employees are typically not compensated from the time they clock in, but are compensated on a "shift time" or gang time basis. Thus, simply because an employee collects items after clocking in does not necessarily indicate that the employee is compensated for that time. Indeed, the record strongly suggests that the employee would not be compensated for that time. In any event, this is a factual issue that cannot be resolved on this record.

The thrust of the parties' dispute, then, is whether plaintiffs' donning and doffing of standard accessories issued by defendant (ear plugs, safety glasses, hair nets and beard guards and bump caps where applicable) constitutes "changing clothes" within the meaning of section 203(o). The parties, and courts generally, refer to such items as "personal protective equipment" (PPE) and the court here utilizes that phrase to refer to these items. As highlighted by plaintiffs, the Ninth Circuit as well as a handful of district courts have endorsed a narrow definition of the term "clothes" that does not extend to PPE. *See, e.g., Alvarez v. IBP, Inc*., 339 F.3d 894, 905 (9th Cir. 2003); *Hoyt v. Ellsworth Co-op. Creamery*, 579 F. Supp. 2d 1132, 1140 (W.D. Wis. 2008); *Perez v. Mountaire Farms, Inc*., 2008 WL 2389798, at *5 (D. Md. June 10, 2008); *Spoerle v. Kraft Foods Global, Inc*., 527 F. Supp. 2d 860, 867 (W.D. Wis. 2007). Defendant, on the other hand, directs the court to the majority of cases, including the Fourth and Eleventh Circuits, that have adopted a broader view of the term "clothes" that includes PPE within its definition. *See Sepulveda v. Allen Family Foods, Inc*., 591 F.3d 209, 214-16 (4th Cir. 2009); *Anderson v. Cagle's, Inc*., 488 F.3d 945, 956-58 (11th Cir. 2007); *In re Tyson Foods, Inc*., 694

13

F. Supp. 2d 1358, 1367 (M.D. Ga. 2010). *Salazar v. Butterball, LLC*, 2010 WL 965353, at *6-7

(D. Colo. Mar. 15, 2010); *Andrako v. U.S. Steel Corp.*, 632 F. Supp. 2d 398, 409-11 (W.D. Pa.

2009). In its opening brief, defendant also relies heavily on the Department of Labor's broad

interpretation of "clothes" in its 2002 and 2007 Opinion Letters, in which the DOL interpreted

"clothes" for purposes of section 203(o) to include PPE. *See* Wage & Hour Div., U.S. Dept. of

Labor, Opinion Letter, 2002 WL 33941766 (June 6, 2002); Wage & Hour Div., U.S. Dept. of

Labor, Opinion Letter, 2007 WL 2066454 (May 14, 2007). These Opinion Letters marked a

change in the DOL's approach to the term "clothes" under section 203(o); in 1997 and 2001, the

DOL issued Opinion Letters narrowly construing the term "clothes" to exclude PPE.. *See* Wage

& Hour Div., U.S. Dept. of Labor, Opinion Letter, 1997 WL 998048 (Dec. 3, 1997); Wage &

Hour Div., U.S. Dept. of Labor, Opinion Letter, 2001 WL 58864 (Jan. 15, 2001).

   Since the filing of the parties' opening briefs, the DOL has changed its interpretation of

"clothes" under section 203(o) yet again, reverting back to its narrow interpretation that excludes

PPE from the definition, and the parties' subsequent and supplemental briefs debate whether and

to what extent the court should defer to the DOL's 2010 Opinion Letter. *See* Wage & Hour Div.,

U.S. Dept. of Labor, Opinion Letter, 2010 WL 2468195 (June 16, 2010). In addition, after the

parties' briefing was complete and while their motions were pending, the Sixth and Seventh

Circuits–despite the DOL's 2010 Opinion Letter–have both adopted a broad interpretation of the

term "clothes" that continues to include PPE within its purview. *Franklin v. Kellogg Co.*, ___

F.3d ___, 2010 WL 3396843 (6th Cir. Aug. 31, 2010); *Spoerle v. Kraft Foods Global, Inc.*, ___

F.3d ___, 2010 WL 2990830 (7th Cir. Aug. 2, 2010).

In *Spoerle*, Kraft employees had filed suit under the FLSA and Wisconsin law seeking compensation for time spent donning and doffing and post-donning and pre-doffing walking time. ___ F.3d at ___; 2010 WL 2990830, at *1. Significantly, the parties had agreed that Wisconsin law required Kraft to compensate its employees for time spent donning and doffing such that, unless the FLSA preempted state law *and* plaintiffs' activities fell outside the scope of the FLSA, plaintiffs were entitled to judgment in their favor. *Spoerle v. Kraft Foods Global, Inc.*, 626 F. Supp. 2d 913, 914 (W.D. Wis. 2009). Although Kraft argued to the district court that section 203(o) applied to exclude such time from "hours worked," the district court ultimately declined to resolve that issue in light of its conclusion that FLSA did not preempt state law in any event and, thus, plaintiffs were entitled to judgment. *Id*. at 918. Kraft appealed to the Seventh Circuit, where the plaintiffs advanced two arguments–first that protective gear is not "clothing" under section 203(o), and second (like the district court had held) that the FLSA did not preempt Wisconsin's own wage-and-hour legislation even though that legislation did not contain an equivalent to section 203(o). ___ F.3d at ____, 2010 WL 2990830, at *1. The bulk of the Seventh Circuit's opinion concerns the preemption issue and the Circuit affirmed the district court on that issue. *Id*. at *2-4. With respect to the plaintiffs' first argument–that PPE did not constitute "clothes" for purposes of section 203(o)–the Circuit rejected that argument in a mere two sentences:

> The first of these arguments is a loser, for reasons given in *Sepulveda v. Allen Family Foods, Inc*., 591 F.3d 209 (4th Cir. 2009). We agree with *Sepulveda* and need not repeat its analysis.

*Id.* at *1.[6]

In *Sepulveda*, in turn, the Fourth Circuit concluded that the compensability of donning and doffing PPE was "the very sort of activity" that section 203(o) intended to leave to the collective bargaining process. 591 F.3d at 214. Relying on the plain meaning of the word "clothes," including its dictionary definition, the Fourth Circuit explained that "clothes" means all garments and accessories covering a person's body at any one time, which would include shoes, bump caps, ear plugs, hair nets and safety glasses. *Id*. at 214-15. Rejecting the plaintiffs' argument that the term "clothes" refers only to "ordinary" or "street" clothes, the Circuit explained:

> [W]e fail to see why the term "clothes" would refer to only "ordinary" or "street clothes." The statute does not use such qualifying adjectives; nor shall we. The statute explicitly refers to "changing clothes . . . at the beginning or end of each *workday*." § 203( o) (emphasis added). It is obvious from both the language and the subject matter of the statute that Congress was talking about work clothes and not, say, just street clothes or pajamas. The statute encompasses precisely the sort of clothes that people wear to, at, or from work, which are often quite different from the sort that people wear on their own time.

*Id.* at 215. The Circuit also rejected the plaintiffs' distinction between a uniform consisting of a shirt and pants and more "protective" clothing:

> We fail to see . . how protective clothing is somehow not clothing. This fact is illustrated by federal regulations which the employees themselves cite in support of their position. Br. of Appellants at 20 n. 5. The Occupational Safety and Health Administration, for example, defines "personal protective equipment" as "specialized *clothing* or equipment worn by an employee for protection against a hazard." 29 C. F. R. § 1910.1030(b) (emphasis added).

---

[6]The Seventh Circuit, then, did not mention the DOL's 2010 Opinion Letter in *Spoerle*.

> Section 203(o) makes no distinction between protective and non-protective clothes. That provision "simply uses the term 'clothes,' which would seem to indicate that it includes all clothing, including that which also constitutes personal protective equipment." *Figas v. Horsehead Corp.*, No. 06-1344, 2008 WL 4170043, at \*10 (W.D. Pa. Sept. 3, 2008) (emphasis omitted). Because many work clothes are protective to some extent, the distinction urged upon us by the employees would be difficult, if not impossible, for courts to administer in a consistent and coherent manner. As counsel for the employees acknowledged at oral argument, the steel-toe shoes at issue here could be reasonably classified as either "normal" clothes or "protective gear." So too could the aprons, smocks, or rubber gloves. These are but a few examples of the many difficult determinations that courts would be required to make were we to adopt the employees' piece-by-piece approach to clothing.

*Id*. at 215-16. Ultimately, the Fourth Circuit determined that its interpretation of "clothes" involved a "straightforward application of the statutory text" and that, under such an interpretation, items constituting PPE "fit squarely" within the definition of "clothes." *Id*. at 216 (quoting *Anderson v. Cagle's, Inc*., 488 F.3d 945, 956 (11th Cir. 2007)). Interestingly, while the Fourth Circuit noted by way of a footnote that its interpretation was consistent with the most recent DOL opinions at the time, it also recognized that the DOL's view had changed over time and emphasized that its view "rests upon the language of the statute, not upon the gyrating agency letters on the subject." *Id*. at 216 n.3.

As noted above, since the Fourth Circuit's decision in *Sepulveda*, the DOL has changed its position once again. In the 2010 Opinion Letter, the DOL criticizes reliance on dictionary definitions in interpreting the word "clothes" and states that the legislative history supports a narrow definition of that word. *See* Wage & Hour Div., U.S. Dept. of Labor, Opinion Letter, 2010 WL 2468195 (June 16, 2010). According to the DOL, "[d]ictionary definitions offer little guidance here. Such definitions are, by design, a collection of a word's various meanings

17

depending on the context in which it is used." *Id.* Noting that secction 203(o) utilizes the word

"clothes" in the context of the "workday," the DOL looked to the legislative history of section

203(o) for further guidance and ultimately determined that:

> [t]he "clothes" that Congress had in mind in 1949 when it narrowed the scope of
> § 203(o)–those "clothes" that workers in the bakery industry change into and
> "took off" in the 1940s–hardly resembles the modern-day protective equipment
> commonly donned and doffed by workers in today's meat packing industry, and
> other industries where protective equipment is required by law, the employer, or
> the nature of the job.

*Id.* The DOL, then, concluded that "the § 203(o) exemption does not extend to protective

equipment worn by employees that is required by law, by the employer, or due to the nature of

the job." *Id.*

The Sixth Circuit recently analyzed the extent to which the DOL's 2010 Opinion Letter

is entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) and concluded that

it was not entitled to deference because the agency's position "has changed repeatedly in the last

twelve years." *Franklin v. Kellogg Co.*, ___ F.3d ___, 2010 WL 3396843, at *6 (6th Cir. Aug.

31, 2010) ("[A]n agency interpretation of a relevant provision which conflicts with the agency's

earlier interpretation is entitled to considerably less deference than a consistently held agency

view." (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 n.30 (1987)). In addition, the Sixth

Circuit concluded that the DOL's interpretation, in any event, was inconsistent with the language

of the statute. *Id.* Relying heavily on *Sepulveda*, the Sixth Circuit looked to the ordinary

meaning of the word "clothes" in the context of the "workday" and concluded that there was "no

reason to limit the definition of clothes to uniforms, which are made up of pants and shirts" and

that "clothes" extended to "any covering" for a person's body "or garments in general, particularly those worn for work." *Id*. at *7.

Recognizing that its conclusion was "at odds" with the Ninth Circuit in *Alvarez* and the DOL's 2010 Opinion Letter, the Sixth Circuit emphasized that the *Alvarez* court–unlike the Sixth Circuit–had concluded that section 203(o) was an exemption to be narrowly construed against the employer and that, in the absence of such a conclusion, there was "no reason" to adopt the narrower meaning of "clothes" when the plain meaning of that word did not support that narrow definition. *Id*. With respect to the DOL's Opinion Letter, the Circuit found "inconceivable" the DOL's suggestion that court's not look to the dictionary definition of a word and referenced the Supreme Court's own history of "consulting dictionaries in defining undefined words in a statute." *Id*. (citations omitted). The Circuit also took to task the DOL's suggestion that a broad interpretation of "clothes" to include PPE is somehow inconsistent with the statute's legislative history:

> Although the FLSA was intended to protect employees, as discussed previously, see supra note 2, Congress enacted the Portal-to-Portal Act in an effort to protect "long-established customs, practices, and contracts between employers and employees." 29 U.S.C. § 251. Much like the Portal-to-Portal Act, Congress enacted § 203(o) to "avoid [ ] another series of incidents which led to the portal-to-portal legislation." 95 Cong. Rec. 11,433 (daily ed. Aug. 10, 1949) (statement of Rep. Herter). As the Eleventh Circuit explained, "construing § 203(o) narrowly against employers as an FLSA 'exemption' contravenes not only basic tenets of statutory construction but also the readily apparent intent of the legislators who approved the amendment's language." *Anderson*, 488 F.3d at 958. The legislative history to which the DOL cites is not contrary to this conclusion. Although the proposed bill may have applied to any activity, the bill as adopted applies only to changing clothes and washing. *See* June 16 Interp. Our interpretation of the word "clothes" does not expand the meaning of the statute to "any activity," as the DOL suggests. It simply recognizes that certain standard

protective equipment is properly considered to be clothes.

*Id.* at *7-8.

This court is fully persuaded by the majority of the Circuit Courts of Appeals and concludes that the standard protective items at issue here, including bump caps, ear plugs, hair nets, beard guards and safety glasses, are properly construed as "clothes" for purposes of section 203(o). Like most of those courts,[7] and in contrast to *Alvarez*, this court has concluded that section 203(o) is not an exemption to be narrowly construed. The court is also persuaded that the plain meaning of the word "clothes" properly includes these items, as each of these items provides covering for the body. While these items also provide some measure of protection, the court agrees with those Circuits which have declined to distinguish between protective and nonprotective clothes, particularly when the statute itself clearly contemplates work-related clothing as opposed to ordinary clothing. Finally, the court agrees with the Fourth and Sixth Circuit that the DOL's continuing "gyrations" on this issue are simply not entitled to deference under *Skidmore* and that, in any event, the DOL's rationale is not persuasive to the court.

C.    *Custom or Practice of Noncompensation*

Having determined that plaintiffs' standard protective items or accessories constitute

---

[7]The Fourth Circuit in *Sepulveda* declined to resolve whether section 203(o) is an exemption on the grounds that it would reach the same interpretation regardless of whether it applied a narrow construction to section 203(o). 591 F.3d at 214 n.1.

"clothes" within the meaning of section 203(o),[8] the court turns to the issue of whether there was a custom or practice under a bona fide collective bargaining agreement of nonpayment for the donning and doffing of these items. A practice of noncompensation exists under a bona fide collective bargaining agreement if the employer does not compensate employees for time spent changing clothes and if the employees have knowledge of the practice and acquiesce in the practice. *See, e.g., Allen v. McWane, Inc*., 593 F.3d 449, 457 (5th Cir. 2010); *Turner v. City of Philadelphia*, 262 F.3d 222, 226 (3d Cir.2001). Knowledge and acquiescence are readily found where the issue has been raised during union-management negotiations but the resulting agreement does not provide for compensation for time spent changing clothes. *In re Tyson Foods, Inc*., 694 F. Supp. 2d 1358, 1368 (M.D. Ga. 2010) (collecting cases). Where, as here, the issue is not the subject of negotiations and, indeed, is not raised in any manner whatsoever, the requisite knowledge and acquiescence may be inferred when a policy of noncompensation for changing time has been in effect for a prolonged period of time and was in effect at the time a collective bargaining agreement was executed. *McWane*, 593 F.3d at 457. Indeed, every Circuit court that has addressed the issue has held that silence on the part of the union in the face of a long-standing policy of noncompensation in effect at the time a CBA is executed is sufficient to satisfy section 203(o)'s requirement of a "custom or policy" under a bona fide collective bargaining agreement. *Id.* at 457-58 (agreeing with Third and Eleventh Circuits that "as long as there was a company policy of non-compensation for time spent changing for a

---

[8]To be clear, the court's ruling is limited to pre-clocking-in donning activities and post-clocking-out doffing activities.

21

prolonged period of time–allowing the court to infer that the union had knowledge of and acquiesced to the employer's policy–and a CBA existed, the parties need not have explicitly discussed such compensation when negotiating the CBA."); *Anderson v. Cagle's*, 488 F.3d 945, 958-59 (11th Cir. 2007) ("a policy concerning [noncompensation] for clothes changing, written or unwritten, in force or effect at the time a CBA was executed satisfies § 203(o)'s requirement of a 'custom or practice under a bona fide' CBA."); *Turner*, 262 F.3d at 226 ("[A] particular custom or practice can become an implied term of a labor agreement through a prolonged period of acquiescence.").

With these legal principles in mind (and largely agreed upon by the parties), the court turns to the real issues disputed by the parties–how long did the policy of noncompensation exist at the Kansas City bakery facility and is that period of time sufficient for the court to state as a matter of law that defendant's hourly production employees had knowledge of and acquiesced to the policy? *See McWane*, 593 F.3d at 457-58. Defendant argues that the policy of noncompensation has existed since at least 1975 (prior to its ownership of the facility) and was certainly in place at the time the most recent collective bargaining agreement was executed in March 2008. Defendant relies on persuasive authority that a policy in place for that length of time is sufficient to satisfy section 203(o). *See id.* at 457-58 ("After more than forty years of non-compensation, we may safely infer that McWane's employees had knowledge of and acquiesced to the policy of non-compensation."); *Anderson*, 488 F.3d at 958-59 (policy of non-compensation in place for 10 years was sufficient for purposes of section 203(o)); *Turner*, 262 F.3d at 226 (policy of non-compensation in place for thirty years was sufficient for purposes of

section 203(o)). Plaintiffs, on the other hand, urge that any policies in existence prior to defendant's ownership of the facility are irrelevant and, when considering only the relationship between defendant and its employees, the policy had only been in place for approximately 6 years at the time the most recent CBA was executed. According to plaintiff, six years of silence is simply insufficient to permit the conclusion that defendant's hourly production employees had knowledge of and acquiesced to the policy of noncompensation. Stated another way, plaintiffs assert that, based on the undisputed facts, a reasonable jury could conclude that plaintiffs had no knowledge of the policy and had not acquiesced to it.

The court need not determine the relevance of the noncompensation policy under Keebler's ownership of the facility, for even assuming that the policy was in place for 6 years as argued by plaintiffs, the only reasonable conclusion to be drawn from the undisputed facts is that defendant's hourly production employees had knowledge of the policy and acquiesced in that policy. It is undisputed that defendant's hourly production employees knew that they were not being compensated for clothes-changing time[9] and yet failed to ever raise that issue with

---

[9]Whether the employees were aware of their legal rights under the FLSA is not pertinent; they simply need to have knowledge of the fact of noncompensation. *See McWane*, 593 F.3d at 459. Plaintiff directs the court to two district court cases requiring not only a prolonged period of silence but additional evidence of knowledge and acquiescence. *See Figas v. Horsehead Corp*., 2008 WL 4170043, at *15 (W.D. Pa. Sept. 3, 2008) (refusing to apply section 203(o) in the absence of evidence that employees were aware of their entitlement to compensation under the FLSA); ,*Kassa v. Kerry, Inc*., 487 F. Supp. 2d 1063, 1071 (D. Minn. 2007) (six-year history of nonpayment, together with union's silence on the issue, insufficient to establish application of section 203(o) in the absence of evidence that employees "knowingly" acquiesced to policy). The court is simply not persuaded by these decisions which, the court notes, were rendered prior to the Fifth Circuit's decision in *McWane* and the Eleventh Circuit's decision in *Anderson*, both of which the court finds far

defendant until shortly before the filing of this lawsuit. For six years, the employees and the union remained silent while defendant did not compensate the employees for time spent changing clothes and they remained silent while the most recent CBA was executed in March 2008. The parties, then, being fully informed of the relevant facts, "chose to exclude compensation" for clothes-changing time. *Gatewood v. Koch Foods of Mississippi, LLC*, 569 F. Supp. 2d 687, 700 (S.D. Miss. 2008). Because the union, in essence, bargained away under a bona fide CBA any right for compensation for this activity, plaintiffs' claims concerning clothes-changing time are untenable under section 203(o). *See id.* ("Even in the absence of a long-standing tradition of non-compensation," when employees and union representatives are conclusively aware of the facts surrounding compensation policies for changing clothes and reach an agreement under a CBA that does not compensate employees for the time, a practice exists under the CBA sufficient to invoke section 203(o)); *accord Anderson*, 488 F.3d at 959 (The absence of negotiations in the face of a policy of noncompensation does not "equate to ignorance of the policy. Rather, it demonstrates acquiescence to it."); *Sisk v. Sara Lee Corp.*, 590 F. Supp. 2d 1001, 1010 (W.D. Tenn. 2008) (five years of nonpayment is sufficient to establish custom or practice under section 203(o)); *Saunders v. John Morrell & Co.*, 1991 WL 529542, at *4 (N.D. Iowa Dec. 24, 1991) (five years of nonpayment is sufficient to establish custom or practice under section 203(o)).

---

more persuasive on the issue.

## IV.    Post-Donning and Pre-Doffing Walking Time

In their complaint, plaintiffs also seek compensation for time spent walking to their work stations after donning their uniforms and accessories and time spent walking from their work before doffing their uniforms and accessories.  In their motion for summary judgment, plaintiffs urge that, as a matter of law, such time is compensable under the continuous workday rule because plaintiffs' donning and doffing activities–even if those activities themselves are noncompensable under section 203(o)–are "integral and indispensable" to the work performed by defendant's hourly production employees such that plaintiffs' donning and doffing activities start the continuous workday and, accordingly, any time spent walking during that continuous workday is compensable.  Defendant, on the other hand, argues that it is entitled to summary judgment on plaintiffs' claims for compensation for walking time on the grounds that, as a matter of law, plaintiffs' donning and doffing activities cannot trigger the continuous workday because those activities are noncompensable by virtue of section 203(o) and only a compensable activity can trigger the continuous workday.  In its reply brief, defendant also argues summary judgment is appropriate because plaintiffs' donning and doffing activities are not "integral and indispensable" to the work performed by hourly production employees and, thus, cannot trigger the continuous workday rule.  As will be explained, the court concludes that activities that are noncompensable by virtue of section 203(o) may nonetheless constitute principal activities for purposes of the continuous workday rule.  The court further concludes that plaintiffs' donning and doffing activities are integral and indispensable to plaintiffs' work and that such activities, accordingly, commence and complete the continuous workday.  Nonetheless, while plaintiffs

25

may thus be entitled to compensation for their post-donning and pre-doffing walking time under the continuous workday rule, the court cannot say as a matter of law that they are entitled to compensation because the parties have not yet briefed the issue of whether such time is *de minimus* and defendant has expressly reserved the right to do so.

The FLSA "typically requires employers to pay their employees for all time spent working on their behalf." *Smith v. Aztec Well Serv. Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006) (citing *United Transp. Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109, 1116 (10th Cir.1999) (citing 29 U.S.C. §§ 206, 207)). Congress has never defined the term "work," however, and the "courts are thus left to determine on a case-by-case basis whether an employee's activities are compensable under the FLSA." *Id.* (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 126 S. Ct. 514, 518-19 (2005)). Early Supreme Court decisions broadly defined both "work" and "workweek." *Alvarez*, 126 S. Ct. at 519. In *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944), the Court defined "work" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." Two years later, in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690-91 (1946), the Court defined "workweek" for purposes of the FLSA to "include all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace."

In 1947, one year after the Supreme Court's decision in *Anderson*, Congress passed the Portal-to-Portal Act, 29 U.S.C. § 254, which "amended the FLSA to shield employers from 'judicial interpretations of the FLSA [that] had superseded "long-established customs, practices,

and contracts between employers and employees, thereby creating wholly unexpected liabilities.""" *Smith*, 462 F.3d at 1286 (quoting *Alvarez*, 126 S. Ct. at 519). The Portal-to-Portal Act which, like the original FLSA, omits any definition of "work," *Alvarez*, 126 S. Ct. at 519, provides that:

> [N]o employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, . . . on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee . . . –
>
> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

*Smith*, 462 F.3d at 1286 (quoting 29 U.S.C. § 254(a)). Employers "are therefore not required to compensate employees for time spent commuting between home and their workplace, or for any activities that are 'preliminary to or postliminary to' their principal activities at work." *Id.* Other than these express exceptions, the Portal-to-Portal Act "does not purport to change [the Supreme Court's] earlier descriptions of the terms 'work' and 'workweek,' or to define the term 'workday.'" *Alvarez*, 126 S. Ct. at 520. Pursuant to the "continuous workday rule," the term "workday" is defined as "the period between the commencement and completion on the same workday of an employee's principal activity or activities." *Id.* at 521.

Several years after the enactment of the Portal-to-Portal Act, the Supreme Court found

27

that Congress passed the Act "still intending for an employee's activities to fall 'within the protection of the [Fair Labor Standards] Act if they are an integral part of and are essential to the principal activities of the employees.'" *Smith*, 462 F.3d at 1287 (quoting *Steiner v. Mitchell*, 350 U.S. 247, 254 (1956)). The Supreme Court "therefore held 'that activities performed either before or after the regular work shift . . . are compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed.'" *Id.* (quoting *Steiner*, 350 U.S. at 256). The Supreme Court "recently clarified this rule in *Alvarez*, explaining 'that any activity that is "integral and indispensable" to a "principal activity" is itself a "principal activity" under § 4(a) of the Portal-to-Portal Act,' and is thus compensable under the FLSA." *Id.* (quoting *Alvarez*, 126 S. Ct. at 525).

Turning back to the claims made by plaintiffs in this case, the threshold issue presented by the parties' submissions is whether donning and doffing activities that are noncompensable by virtue of the application of section 203(o) can nonetheless constitute principal activities sufficient to commence and complete the continuous workday. Defendant's submissions on this issue rely chiefly on an opinion letter from the Department of Labor (and cases, in turn, relying on the DOL's opinion letter) summarily concluding that a section 203(o) activity cannot be considered a principal activity. Wage & Hour Div., U.S. Dept. of Labor, Opinion Letter, 2007 WL 2066454 (May 14, 2007). In the Department of Labor's most recent pronouncement on this issue, however, the Department recognized that the clear "weight of authority" is to the contrary and that the "majority of district courts" have rejected the opinion letter. The Department itself

28

now states, "consistent with the weight of authority," that clothes changing covered by section 203(o) "may be a principal activity." Wage & Hour Div., U.S. Dept. of Labor, Opinion Letter, 2010 WL 2468195 (June 16, 2010).

The court finds that the most persuasive cases (all of which precede the Department of Labor's June 2010 opinion letter) conclude that section 203(o) activities can be considered principal activities for purposes of the continuous workday rule. Thus, even in the absence of the recent Administrator's Interpretation, the court would conclude that plaintiffs' donning and doffing activities that are excluded from compensable time by virtue of section 203(o) nonetheless can constitute principal activities so long as those activities are integral and indispensable to the work performed by defendant's hourly production employees. These cases reason that section 203(o) relates only to the compensability of time spent donning and doffing as a result of the collective bargaining process and not to the character of those activities. *See Franklin v. Kellogg Co.*, ___ F.3d ___, 2010 WL 3396843, at *10-11 (6th Cir. Aug. 31, 2010) (compensability under § 203(o) is unrelated to whether an activity is a principal activity); *In re Tyson Foods, Inc.*, 694 F. Supp. 2d 1358, 1369-70 (M.D. Ga. 2010) (collecting cases and concluding that section 203(o) tasks can be considered principal activities that start the continuous workday); *Arnold v. Schreiber Foods, Inc.*, 690 F. Supp. 2d 672, 683-85 (M.D. Tenn. 2010) ("Logically, whether an activity counts as "changing clothes" under § 203(o) does not necessarily affect whether it is a principal activity."); *Andrako v. United States Steel Corp.*, 632 F. Supp. 2d 398, 413 (W.D. Pa. 2009) ("Section 203(o) relates to the compensability of time spent donning, doffing, and washing in the collective-bargaining process. It does not render such

time any more or less integral or indispensable to an employee's job."); *Gatewood v. Koch Foods of Mississippi, LLC*, 569 F. Supp. 2d 687, 702 & n.31 (S.D. Miss. 2008) (finding that commencement of donning and doffing could trigger continuous workday rule because § 203(o) does not affect the fact that donning and doffing could be the first integral and indispensable acts performed by employees).

The court turns, then, to the issue of whether plaintiffs' donning and doffing activities here are integral and indispensable to the work they perform for defendant because, as reaffirmed in *Alvarez*, to the extent plaintiffs' donning and doffing activities are "integral and indispensable" to plaintiffs' work, then those activities themselves are principal activities sufficient to commence and complete the continuous workday, rendering any walking time within that workday compensable (again, subject to a determination regarding whether such time is *de minimus*). *See Alvarez*, 126 S. Ct. at 525. In *Steiner v. Mitchell*, 350 U.S. 247 (1956), the Supreme Court held that changing into protective gear before the beginning of the shift and showering and changing out of the protective gear at the end of the shift was an integral and indispensable part of employment at a battery-manufacturing plant. *Id*. at 256. While the Court did not hold that "changing clothes and showering can only be integral and indispensable when the working environment was toxic or lethal, . . . at least one court applying *Steiner* has made that distinction." *Franklin v. Kellogg Co.*, ___ F.3d ___, 2010 WL 3396843, at *11 (6th Cir. Aug. 31, 2010) (citing *Gorman v. Consol. Edison Corp.*, 488 F.3d 586 (2d Cir. 2007)). The Sixth Circuit summarized *Gorman* as follows:

> In *Gorman*, the Second Circuit held that donning and doffing of protective

gear-helmet, safety glasses, and steel-toed boots-was not integral and indispensable to employment at a nuclear power plant. *Id*. [at 594]. It distinguished *Steiner* because "the environment of the battery plant could not sustain life-given the toxic substances in liquid, solid, powder, and vapor form (and in the dust of the air) that 'permeate[d] the entire [battery] plant and everything and everyone in it.'" *Id*. at 593 (quoting *Steiner*, 350 U.S. at 249) (alterations in original). It interpreted *Steiner* narrowly for the proposition "that when work is done in a lethal atmosphere, the measures that allow entry and immersion into the destructive element may be integral to all work done there." *Id*. However, under *Gorman*, when such a lethal environment is not present and the gear is not literally required for entry into the plant, donning and doffing gear is not integral.

___ F.3d at ___, 2010 WL 3396843, at *11.

As explained by the Circuit in *Kellogg*, the Second Circuit's "position appears to be unique" and a "broader interpretation" of both *Steiner* and the "integral and indispensable" standard is espoused by the Eleventh and Ninth Circuits. *Id*. at *11-12. In *Bonilla v. Baker Concrete Constr., Inc*., 487 F.3d 1340 (11th Cir. 2007), the Eleventh Circuit analyzed three factors as relevant to the determination of whether an activity is integral and indispensable: whether the activity is required by the employer; whether the activity is necessary for the employee to perform his or her duties; and whether the activity primarily benefits the employer. *Id*. at 1344 (concluding that time spent by employees going through security screening at airport to reach their work sites was not integral and indispensable because employer had no discretion as to whether its employees would be screened–a process mandated by FAA–and received no benefit from security regime). In *Ballaris v. Wacker Siltronic Corp*., 370 F.3d 901, 910 (9th Cir. 2004), the Ninth Circuit held that changing into and out of plant uniforms was integral and indispensable to the principal activities because the plant uniforms were required by the

employer and because the wearing of those uniforms benefitted the employer in many ways, including eliminating contamination and assisting the company in ensuring the quality of the silicon chips manufactured at the plant, keeping the company competitive, promoting a clean internal philosophy and garnering favorable industry attention. In *Kellogg*, then, the Sixth Circuit adopted the reasoning of *Bonilla* and *Ballaris* and, under that broader interpretation of "integral and indispensable," concluded that the donning and doffing of Kellogg's uniform and equipment is "both integral and indispensable." As explained by the Circuit:

> First, the activity is required by Kellogg. Second, wearing the uniform and equipment primarily benefits Kellogg. Certainly, the employees receive protection from physical harm by wearing the equipment. However, the benefit is primarily for Kellogg, because the uniform and equipment ensures sanitary working conditions and untainted products. Because Franklin would be able to physically complete her job without donning the uniform and equipment, unlike the plaintiffs in *Steiner*, it is difficult to say that donning the items are *necessary* for her to perform her duties. Nonetheless, considering these three [*Bonilla*] factors, we conclude that donning and doffing the uniform and standard equipment at issue here is a principal activity.

___ F.3d at ____, 2010 WL 3396843, at *12.

While defendant here contends that the court should adopt the narrow view of *Steiner* articulated by the Second Circuit in *Gorman*, it contends that summary judgment in its favor is mandated even under the broader view articulated in *Bonilla*. To begin, the court declines to adopt the *Gorman* view, because it believes the Tenth Circuit would not read *Steiner* so narrowly. Indeed, in *Reich v. IBP, Inc*., 38 F.3d 1123 (10th Cir. 1994), the Tenth Circuit, albeit in dicta, strongly suggested that the donning and doffing of standard protective gear are integral and indispensable to the work performed by production employees in the meat processing

context. *Id.* at 1125. In *Reich*, the trial court had held that the donning and doffing of specialized protective gear worn by knife-wielding employees was compensable because the wearing of those items was "an integral and indispensable part" of the work of those employees. *See id.* By contrast, the trial court held that the basic protective gear worn by all production employees was not compensable because the wearing of those items was not an integral and indispensable part of the production workers' jobs, but were standard items required throughout many industries. *See id.* On appeal, the Circuit agreed with the trial court's conclusions regarding compensability, but did so for "slightly different reasons," expressly rejecting the trial court's conclusion that the wearing of basic protective gear was not integral and indispensable to the work performed by production workers:

> [T]he fact that such equipment is well-suited to many work environments does not make it any less integral or indispensable to these particular workers than the more specialized gear. In fact, the same reasons supporting the finding of indispensability and integrality for the unique equipment (i.e., company, OSHA, and Department of Agriculture regulations requiring such items and the health, safety, and cost benefits to the company of the employees wearing the items) apply with equal force to the "standard" equipment.

*Id.*[10] Based on the Circuit's statements in *Reich*, then, it is hard to imagine that the Circuit would follow *Gorman* and conclude that donning and doffing of gear was "integral and indispensable" only when such gear was literally required for entrance into a lethal or toxic environment.

_____

[10]Ultimately, the Circuit held that a "better explanation for the non-compensability of the donning and doffing of the latter items is that it is not work within the meaning of the FLSA." *Id.* As this court has previously noted, however, the Circuit's "work" analysis has been undermined by the Supreme Court's subsequent opinion in *Alvarez. See Garcia v. Tyson Foods, Inc.*, 474 F. Supp. 2d 1240, 1247 (D. Kan. Feb. 16, 2007).

Moreover, the Circuit's reference to the fact that the employer required such gear and benefitted from its employees wearing such gear supports this court's conclusion that the Tenth Circuit would be more inclined to follow the three-part test articulated in *Bonilla*.

Applying that three-part test, the court concludes that plaintiffs' donning and doffing activities are integral and indispensable to the work they perform for defendant. It is undisputed that defendant requires its hourly production employees to wear uniforms provided by defendant as well as company-issued accessories including hair nets, beard guards, ear plugs and safety glasses. Indeed, employees who clock in prior to donning a uniform and accessories are subject to discipline. *See Spoerle v. Kraft Foods Global, Inc*., 527 F. Supp. 2d 860, 864 (W.D. Wis. 2007) (concluding that donning and doffing activities as a matter of law are integral and indispensable in part because employees at plant who failed to done equipment could be subject to discipline).

Moreover, the uniform and accessories requirements primarily benefit defendant by ensuring that defendant is able to produce and sell uncontaminated food products. While defendant contends that the requirements benefit plaintiffs "as much" as defendant by permitting plaintiffs to maintain clean street clothes, the court finds that "the minor benefit to the employees of keeping their street clothes clean pales by comparison" to the benefit reaped by defendant. *Jordan v. IBP, Inc*., 542 F. Supp. 2d 790, 807 (M.D. Tenn. 2008). As the district court aptly explained in *Jordan*:

> Though it is perhaps the case that the frocks provide a benefit to the plaintiffs, that does not alter the fact that the reason the defendants require their employees to wear frocks is motivated not by the employees' needs, but rather by the

34

defendants' need to maintain a sanitary production floor. Moreover, although the frocks are not specifically required by federal law, their use enables the defendants to meet federal regulations requiring employees to wear clean garments and the company to maintain hygienic practices on the production floor. . . . The fact is that the frocks enable the defendants to maintain the cleanliness of their facilities and prevent their product from becoming contaminated. This benefit is enormous when one considers the damage that would result to the defendants if they were to sell a contaminated food product. The minor benefit to the employees of keeping their street clothes clean pales by comparison. As such, there is no question that, as a matter of law, it is the defendants who reap not only *some* benefit from the donning and doffing of the frocks, but the *primary* benefit of doing so.

*Id.*; *accord In re Tyson Foods, Inc.*, 694 F. Supp. 2d 1358, 1364-65 (M.D. Ga. 2010) (denying defendant's motion for summary judgment where employer required employees to wear uniform and gear and those requirements enabled defendant to produce and sell uncontaminated food products); *Hoyt .v Ellsworth Co-op. Creamery*, 579 F. Supp. 2d 1132, 1140-41 (W.D. Wis. 2008) (concluding as a matter of law that donning and doffing activities were integral and indispensable where employer required uniforms and did so to satisfy customer demands and state regulatory authorities).

Finally, while the donning and doffing of the uniform and accessories in this case might not be "necessary" to the performance of plaintiffs' jobs in the sense that plaintiffs are obviously able to physically complete their jobs without donning the uniform and accessories (unlike the plaintiffs in *Steiner*), the court concludes that plaintiffs' donning and doffing activities are "necessary" to plaintiffs' work activities because the company-issued uniform is required by defendant and the company-issued accessories are required by both defendant and either the FDA or OSHA. *See Anderson v. Perdue Farms, Inc.*, 604 F. Supp. 2d 1339 (M.D. Ala. 2009)

35

(noting that whether an activity is "necessary" for the employee to perform his or her duties is closely tied to the question of whether the employer requires the activity; compulsory federal regulations rendered donning and doffing activities necessary).

For the foregoing reasons, the court concludes that section 203(o) relates only to the compensability of time spent donning and doffing and does not affect whether that activity may be considered a principal activity for purposes of triggering the continuous workday rule. The court further concludes that plaintiffs' donning and doffing activities in this case are integral and indispensable to their work such that any post-donning and pre-doffing walking time may be compensable. A final determination regarding compensability, however, depends on consideration of whether that time is *de minimis*–an issue that the court anticipates will be raised and resolved at a later date.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' motion for partial summary judgment (doc. 130) is **granted in part and denied in part** and defendant's cross-motion for summary judgment (doc. 144) is **granted in part and denied in part**.

**IT IS SO ORDERED.**

Dated this 16th day of September, 2010, at Kansas City, Kansas.

s/ John W. Lungstrum

John W. Lungstrum
United States District Judge