IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOSEPH L. McDONALD, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 08-2473-JWL |
| | ) |
| KELLOGG COMPANY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This is a wage and hour suit in which plaintiffs, current and former hourly production employees at defendant's bakery facility, claim that defendant violated the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., by, among other things, failing to compensate them for time spent walking to and from workstations. The case is now before the undersigned U.S. Magistrate Judge, James P. O'Hara, on plaintiffs' motion to compel defendant to allow entry into its facility for the purpose of conducting a time and motion study related to plaintiffs' walk time **(doc. 197)**. The motion is fully briefed (*see* docs. 197, 202, and 205), and the undersigned heard argument on the motion during a telephone hearing on February 2, 2011. At the hearing, plaintiffs appeared through counsel, Michael F. Brady and K.C. Connealy. Defendant appeared through counsel, James N. Boudreau and Christina T. Tellado-Winston. For the reasons discussed below, plaintiffs' motion is granted, but entry into the facility is subject to certain conditions.

**I.     Background**

Plaintiffs have served a request, pursuant to Fed. R. Civ. P. 34, seeking access to defendant's bakery facility for their expert, Dr. Kenneth S. Mericle, to gather data on the time employees spend walking to and from their workstations (*see* doc. 195).[1] Dr. Mericle proposes to use Radio Frequency Identification technology ("RFID") to gather this data.

To conduct an RFID study, Dr. Mericle would first place electronic readers at the employees' locker rooms and at the time clocks outside their workstations. Next, Dr. Mericle would issue credit-card-sized cards to employees to carry with them during the study. When the cards pass in the proximity of the readers, a time stamp in the reader would record the time that the employee passed through the area. Thus, the readers would record the time that card-carrying employees leave the locker room and the time that they arrive at the workstations (and vice versa). In addition, Dr. Mericle would place small sensors at various locations in the factory, such as bathrooms, to register detours in the employees' paths to and from their workstations. Plaintiffs suggest that only Dr. Mericle and, perhaps, one other individual would need to be on-site during the study to ensure that there are no problems with the RFID equipment.

Plaintiffs request that Dr. Mericle enter defendant's facility on two occasions. On the first entry, Dr. Mericle would simply observe plant conditions and employee habits in order

---

[1]On September 16, 2010, the presiding U.S. District Judge, John W. Lungstrum, issued a memorandum and order ruling on cross-motions for summary judgment (doc. 167). Judge Lungstrum held, among other things, that plaintiffs may be entitled to compensation for time spent walking to and from their workstations.

to plan placement locations for the RFID readers and sensors. On the second entry, Dr. Mericle would set up the readers and sensors, and issue cards to the employees. Plaintiffs propose that the study then be conducted over a period of several days.

Defendant objects to the RFID study as overreaching discovery. Defendant asserts that nothing in the Federal Rules of Civil Procedure requires it to alter its factory by attaching readers and sensors to its property, or to mandate that its employees carry reader cards. According to defendant, the proposed RFID study is overly broad and burdensome.

## II.     Legal Standards

Fed. R. Civ. P. 34(a)(2) governs the entry of a party onto another party's property for the purpose of conducting discovery. Under the rule,

> A party may serve on any other party a request within the scope of Rule 26(b) to permit entry onto . . . property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated . . . operation on it.

"The rule permits the 'observation of machinery, *work practices*, or manufacturing operations on a party's premises.'"[2] To fall within the scope of Rule 26(b), the request must simply seek "nonprivileged matter that is relevant to any party's claim or defense."[3]

---

[2]*Long v. U.S. Brass Corp.*, No. 03-B-968BNB, 2004 WL 1725766, at *3 (D. Colo. June 29, 2004) (quoting Jay E. Grenig and Jeffrey S. Kinsler, *Handbook of Federal Civil Discovery and Disclosure*, § 9.22 (2d ed.)) (emphasis added).

[3]Fed. R. Civ. P. 26(b)(1).

"Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[4]

The right of entry under Rule 34 to inspect and test has limits, however. The court has discretion to limit discovery if it determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information . . . ; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit."[5] Where the burdens and dangers that would accompany a proposed study outweigh the degree to which the proposed study will aid in the search for the truth, the study should not be permitted.[6]

Where the discovery sought is relevant on its face, the party resisting discovery has the burden to support its objection.[7] Here, there is no dispute that the data plaintiffs would gather from the RFID study—measurements of the time it takes employees to walk to and from their workstations—is relevant. Judge Lungstrum held as much in his September 16, 2010 order. Thus, defendant bears the burden of establishing that the burdens and dangers that would accompany the RFID study outweigh the study's usefulness. An affidavit or other

---

[4]*Id.*

[5]Fed. R. Civ. P. 26(b)(2)(C).

[6]*See N.Y. State Assoc. for Retarded Children, Inc. v. Carey*, 706 F.2d 956, 960 (2d Cir. 1983); *Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 908 (4th Cir. 1978).

[7]*Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 211 (D. Kan. 2002).

evidentiary proof is typically necessary to satisfy this burden, but, at a minimum, defendant must "provide a detailed explanation as to the nature and extent of the claimed burden."[8]

## III. Discussion

In objecting to plaintiffs' proposed RFID study, defendant broadly asserts that "[c]onducting such a study during working hours will consume considerable time at [defendant's] expense, will interfere with operations, potentially jeopardize the safety of individuals conducting the study, and expose [defendant's] proprietary production processes to disclosure to third parties."[9] Defendant suggests that plaintiffs can estimate employee walking time much more simply by measuring the distances between employee locker rooms and workstations, and then using expert information concerning reasonable walk times.

The court rejects defendant's objections and grants plaintiffs' motion to compel. Pursuant to Rules 34(a)(2) and 26(b)(1), the court clearly has the authority to order access to defendant's facility for the purpose of conducting the RFID study and gathering relevant walk-time data.[10] While there may be, as defendant suggests, alternate means to gather data

---

[8]*Kan. Waste Water, Inc. v. Alliant Techsystems, Inc.*, No. 02-2605, 2005 WL 327144, at *3 (D. Kan. Feb. 3, 2005) (internal quotation marks and citations omitted); *see also Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 222 F.R.D. 450, 454 (D. Kan. 2004) (citing *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 653 (D. Kan. 2004); *Klesch & Co. Ltd. v. Liberty Media Corp.*, 217 F.R.D. 517, 524 (D. Colo. 2003); and *McCoy v. Whirlpool Corp.*, 214 F.R.D. 642, 646 (D. Kan. 2003)).

[9]Doc. 202 at 6.

[10]Although neither the parties nor the court is aware of another case in which RFID technology was used, the study proposed by plaintiffs is not out of the realm of the type of testing courts have permitted. *See, e.g., Williams v. Continental Oil Co.*, 215 F.2d 4, 6 (10th Cir. 1954) (holding that "the court has power under the rule to order the making of a

regarding employee walking time, such is not the test for determining whether the discovery requested should be compelled. Defendant is not at liberty to dictate how plaintiffs should gather information to support their case.[11] Rather, the rules permit plaintiffs to enter defendant's property for the purpose of gathering relevant information *unless* defendant makes a "particularized showing" that the discovery plaintiffs propose would create an undue burden or danger.[12] Defendant has made no attempt to meet this burden—defendant has not submitted an affidavit discussing the burdens or dangers that would accompany the proposed RFID study, nor has defendant even "provide[d] a detailed explanation as to the nature and extent of the claimed burden."[13] Although during the hearing defense counsel requested an opportunity to supplement the record in this regard, the undersigned denied defendant's tardy request for a second bite at the apple.

Considering the record as it stands, the court finds that defendant has offered no support for its conclusory assertion that the proposed RFID study would consume a considerable amount of defendant's time and would interfere with defendant's operations.

---

deviational and directional survey" of an oil and gas well); *Dunham v. Coffeyville Res.*, No. 07-1186, 2007 WL 2403689, at *3–4 (D. Kan. Aug. 20, 2007) (allowing inspection, testing, and sampling of defendant's refinery by plaintiff's experts).

[11]*Curry v. Allan S. Goodman, Inc.*, No. 3:02CV1149, 2003 WL 22305161, at *1 (D. Conn. May 22, 2003) ("Consistent with Rule 34(a), defendant is not at liberty to refuse plaintiff's request for an on-site visit and substitute what it deems comparable.").

[12]*Jackson v. BNSF Railway Co.*, No. 06-00802, 2007 WL 1630691, at *1 (D. Colo. June 4, 2007).

[13]*Kan. Waste Water*, 2005 WL 327144, at *3 (internal quotation marks and citations omitted).

As plaintiffs explained at the hearing, the readers and sensors can be placed unobtrusively and without having to make permanent modifications to defendant's property. They will record no data other than the time that the cards pass in their vicinity. Indeed, this proposed methodology appears to be less intrusive than other methods of conducting time and motion studies (e.g., videotaping employees or having experts follow employees as they walk the designated paths). With regard to defendant's concern that its proprietary information is at risk, the Stipulated Protective Order already entered in this case (doc. 56) is sufficient to protect defendant's trade secrets.[14]

Nor has defendant demonstrated or explained what legitimate safety concerns would be faced by persons conducting the study. Nonetheless, the court will permit defendant to conduct safety-training, limited to one hour, as a prerequisite for access to the facility. In addition, as discussed below, defendant's safety manager may accompany Dr. Mericle while he is in the facility.

Finally, as to defendant's complaint that its employees should not be required to carry the small reader cards, the court agrees that no employee should be compelled to carry the card against his or her will.[15] However, as noted by plaintiffs, the vast majority of hourly

---

[14]Defendant has provided no support for its request that plaintiffs' expert and counsel execute a separate Trade Secrets Agreement, and the court will not order it.

[15]The court notes, however, that courts have not hesitated to direct the employees of property owners to perform reasonable tasks during inspections. *See, e.g., Peterson v. Union Pacific R.R. Co.*, No. 06-3084, 2007 WL 3232501, at *2 (C.D. Ill. Nov. 1, 2007) (ordering employee to operate crossing signal system and open components and equipment, among other things).

production workers whose walk time the RFID study would measure are opt-in plaintiffs in this case. The court finds it likely that these employees will voluntarily carry the card. The court permits plaintiffs' counsel and expert to supply cards to employees who voluntarily consent to carry them during the study.[16]

**IV.  Order**

The court therefore orders defendant to grant entry to its facility to plaintiffs' counsel and experts for the purpose of conducting an RFID study at a mutually-agreeable time to be negotiated within the next thirty days. The entry shall be limited to two days. On the first day, Dr. Mericle may observe and tour the facility for the purpose of determining the best placement for the readers and sensors. On the second day, Dr. Mericle and his assistants shall conduct the RFID study. The study may occur over a twenty-four hour period such that walk-time data is recorded for multiple work shifts. On both dates of entry, Dr. Mericle shall be met by defendant's safety manager, who shall ensure that the RFID equipment is placed in a manner that will not cause injury.[17]

As alluded to above, the readers and sensors shall be placed as unobtrusively as possible. They shall be battery operated; no hard-wiring into defendant's property is permitted.

---

[16]*See N.O. v. Callahan*, 110 F.R.D. 637, 641 (D. Mass. 1986) (holding that patients could consent to being videotaped during plaintiffs' inspection of defendant's mental health facility).

[17]The court refuses to impose defendant's unsupported requirement that plaintiffs post a bond in the amount of $25,000 to insure against potential property damage and injuries that occur during the inspection.

No unwilling employee shall be compelled to carry a reader card. Plaintiffs' counsel shall communicate directly with their clients and/or post a notice at the facility regarding the RFID study and the opportunity for consenting employees (be they opt-in plaintiffs or not) to pick up the reader cards on the date set.

In consideration of the foregoing, plaintiffs' motion to compel is granted.

Dated February 7, 2011, at Kansas City, Kansas.

    s/James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge