# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Joseph L. McDonald, Mavis A.**
**McDonald and Lyndon Ellis,**

        **Plaintiffs,**

**v.**                               **Case No. 08-2473-JWL**

**Kellogg Company,**

        **Defendant.**


## <u>MEMORANDUM & ORDER</u>

Plaintiffs, individually and on behalf of others similarly situated, filed this wage and hour suit against defendant alleging violations of the overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. Specifically, plaintiffs, all current or former hourly production employees at defendant's bakery facility in Kansas City, Kansas, allege that defendant failed to compensate them for time spent performing activities such as donning and doffing required uniforms and gear; gathering required materials, tools and equipment; and post-donning and pre-doffing walking to and from work stations. The parties stipulated to conditional certification and notice to the putative collective class–a class that now is comprised of approximately 385 plaintiffs.

The parties also agreed to a bifurcated discovery process limiting the first stage of discovery to issues relating to the applicability of section 203(o) of the FLSA and, if necessary, a second-phase of merits-based discovery, including the issue of damages. After the close of the

first phase of discovery, the parties cross-moved for summary judgment on the applicability of section 203(o).   In a prior memorandum and order, this court held that section 203(o) barred plaintiffs' claims for compensation for time spent donning and doffing company-issued uniforms and personal protective equipment.   The court further held, however, that section 203(o) did not preclude plaintiffs' claims for compensation for "walking time" (and any other time within the continuous workday) on the grounds that activities such as donning and doffing that are non-compensable by virtue of section 203(o) may nonetheless constitute principal activities for purposes of the continuous workday rule.   Thus, if plaintiffs were to demonstrate that their donning and doffing activities constitute principal activities sufficient to start the continuous workday, then they would be entitled to compensation for their post-donning and pre-doffing time under the continuous workday rule subject to a determination of whether such time is de minimis–an issue that defendant expressly reserved for the second-phase of discovery and summary judgment briefing.[1]

The second phase of discovery has now closed and this matter is now before the court on the parties' motions for summary judgment.   Both parties move for summary judgment on the issue of whether defendant's employees are permitted to change clothes at home (as urged by

---

[1]In its memorandum and order, the court initially concluded that, as a matter of law, plaintiffs' donning and doffing activities are integral and indispensable to plaintiffs' principal work activities such that those donning and doffing activities triggered the continuous workday rule. On defendant's motion for reconsideration, the court vacated that portion of its order on the grounds that the ruling was premature in light of the fact that the parties had agreed to limit their initial summary judgment briefs to the applicability of section 203(o) (although both parties' briefs went beyond that issue).

defendant) or whether they are required to change clothes on the premises (as urged by plaintiffs). Defendant contends that because its employees are not required to change clothes on the premises and are free to change clothes at home, changing clothes cannot constitute a principal activity sufficient to trigger the continuous workday rule (and, accordingly, plaintiffs' walking time is non-compensable). Plaintiffs argue that because the undisputed facts demonstrate that defendant's employees are not permitted to change clothes at home and are required to change clothes on the premises, plaintiffs' clothes-changing is a principal activity sufficient to trigger the continuous workday rule such that plaintiffs' walking time is compensable.

Defendant also contends that they are entitled to summary judgment on all claims because plaintiffs in the bakery only work 7 hours and 10 minutes per day (in light of two 25-minute paid breaks that plaintiffs receive) such that, under the best case scenario for plaintiffs, plaintiffs' walking time claims do not implicate the FLSA's minimum wage or overtime provisions in any respect. Finally, defendant moves for summary judgment on all claims on the grounds that the amount of time at issue here is de minimis. Aside from defendant's complete defenses to liability, defendant moves for partial summary judgment on the grounds it has established a § 259(a) defense to liability for all violations occurring prior to June 16, 2010–the date when the United States Department of Labor reversed prior Opinion Letters on which defendant alleges it had relied in good faith in maintaining the pay practices challenged here. For these same reasons, defendant contends that it acted at all times in good faith and did not knowingly or

recklessly violate the FLSA in determining how to compensate plaintiffs such that plaintiffs are not entitled to recover liquidated damages and plaintiffs' claims are subject to a two-year statute of limitations.

Plaintiffs, in addition to issues outlined above, move for summary judgment on defendant's purported time-clock "rounding" policy which, plaintiffs assert, violates the FLSA as a matter of law.

I.     **Facts**

Since 2001, defendant Kellogg Company has owned and operated a bakery facility in Kansas City, Kansas.  Prior to that time, the facility was owned and operated by the Keebler Company.  At all times pertinent to this lawsuit, hourly production employees at the bakery facility have been represented by Local 184-L Retail, Wholesale & Department Store Union. Named plaintiffs Joseph McDonald, Mavis McDonald and Lyndon Ellis are all hourly production employees at the bakery facility in Kansas City, Kansas.

Hourly production employees at the facility are required to wear a company-issued uniform consisting of a shirt, pants and shoes.  The parties vigorously dispute whether employees are permitted to change into and out of their uniforms at home or whether they are required to change at the bakery. Additional facts relating to this issue are related below.  In any event, while certain employees, at least on occasion, have worn uniforms to and from work, it is undisputed that the majority of employees change into their uniforms in the locker rooms at the facility,

4

where Kellogg maintains clean uniforms for its employees in each employee's locker. In addition to the company-issued uniform, all hourly production employees are required to wear certain company-issued accessories, including hair nets, ear plugs and safety glasses. If applicable, employees are also required to wear beard guards. Hair nets, ear plugs and beard guards are maintained in dispensers just outside the locker rooms and just outside work areas so that employees typically obtain these items after leaving the locker room while walking to their work areas. Safety glasses are typically maintained in employees' lockers. A handful of other items are maintained in employees' lockers but are not common to all employees, such as bump caps and various tools used by employees in certain departments.

Prior to the start of each shift, hourly production employees are required to "clock in" at his or her designated work area utilizing employee time clocks that are located outside each work area. Employees, however, are not compensated beginning at the time they "clock in." Rather, defendant pays its hourly production employees on a "gang time" or "shift time" basis. Thus, if the morning shift begins at 6:00a.m., then the employees working the morning shift are paid beginning at 6:00am regardless of whether an individual employee clocked in at 5:52a.m. or 6:03 a.m. Thus, hourly production employees are not compensated for many activities that occur prior to the start of their actual shift time, such as time spent changing into uniforms (which the court has held is not compensable by virtue of section 203(o)); walking from the locker rooms to the production floor; and obtaining tools maintained on the production floor.

At the end of the employees' shifts, employees remove and return whatever gear and tools

5

they have obtained from their work areas and, as employees walk back to the locker rooms, they place their ear plugs, hair nets and beard guards in bins designated for those soiled items. Once the employees reach the locker rooms (assuming they change out of their uniforms at work), they change out of their uniforms and leave their safety glasses and any other items (e.g., bump cap, scraper) in their lockers. Again, because defendant pays its hourly production employees on a "shift time" basis, these employees are not compensated for the time spent after the end of a shift, including time spent returning tools obtained on the production floor; walking to the locker rooms; as well as the legally non-compensable time for changing out of uniforms.

## II.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).[2]   In applying this standard, the court views the evidence and make inferences in the light most favorable to the non-movant. *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011).   A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue. *Id*. (quoting

---

[2]The legal standard does not change if the parties file cross-motions for summary judgment. Each party has the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law. *Atlantic Richfield Co. v. Farm Cr. Bank*, 226 F.3d 1138, 1148 (10th Cir.2000).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Although the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party, "the nonmoving party must present more than a scintilla of evidence in favor of his position."  *Id*. (quoting *Ford v. Pryor*, 552 F.3d 1174, 1177–78 (10th Cir. 2008)).


**III.   Whether Clothes-Changing is a Principal Activity**

As noted earlier, the court has previously held that section 203(o) barred plaintiffs' claims for compensation for time spent donning and doffing company-issued uniforms and personal protective equipment.  Nonetheless, plaintiffs' donning and doffing activities remain highly significant in this case because plaintiffs' remaining claims for compensation hinge in large part on whether plaintiffs can establish that their donning and doffing activities constitute principal activities for purposes of the continuous workday rule.  For if plaintiffs can demonstrate that their donning and doffing activities constitute principal activities sufficient to start the continuous workday, then they are entitled to compensation for their post-donning and pre-doffing time pursuant to the continuous workday rule (subject to a determination of whether such time is de minimis).

Generally, the FLSA requires that employees be paid a minimum wage and paid at an overtime rate for hours worked in excess of forty in a workweek.  *Salazar v. Butterball, LLC*, 644 F.3d 1130, 1135 (10th Cir. 2011).  The statute does not define "work" or "workweek," and the Supreme Court's early FLSA decisions interpreted those terms broadly.  *Id*. (citing *IBP, Inc.*

7

*v. Alvarez*, 546 U.S. 21, 25 (2005)). In *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690–91 (1946), the Supreme Court held that the "workweek" included "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." *Id.* In 1947, one year after the *Mt. Clemens* decision, Congress enacted the Portal–to–Portal Act to shield employers from expansive judicial decisions that, in Congress's view, had interpreted the FLSA "in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities." *See id.* (quoting 29 U.S.C. § 251(a)).

The Portal–to–Portal Act provides that employers cannot be liable under the FLSA for failure to compensate time an employee spends performing activities that are preliminary or postliminary to "the principal activity or activities which such employee is required to perform." 29 U.S.C. § 254(a). The Supreme Court has interpreted this provision to mean that activities performed prior or subsequent to a regular work shift are compensable if they are "an integral and indispensable part of the principal activities for which covered workmen are employed." *Salazar*, 644 F.3d at 1135 (quoting *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956)). Indeed, as the Supreme Court has clarified, any activity that is integral and indispensable to a principal activity is itself a principal activity under the Portal-to-Portal Act. *Smith v. Aztec Well Serv. Co.*, 462 F.3d 1274, 1287 (quoting *IBP*, 546 U.S. at 37). Thus, if donning and doffing is an integral and indispensable activity, any post-donning and pre-doffing walking time (*i.e.*, between locker rooms and production areas) would be compensable under the Portal–to–Portal Act. *Salazar*,

8

644 F.3d at 1135 (citing *IBP*, 546 U.S. at 36).

Defendant asserts that plaintiffs' donning and doffing activities as a matter of law cannot constitute principal activities because defendant undisputedly permits its employees to don and doff their uniforms at home. According to defendant, the fact that employees have the option of changing at home means that their clothes-changing activities cannot be principal activities. Plaintiffs, on the other hand, assert that the undisputed facts demonstrate that plaintiffs are required to change clothes at the bakery, thus requiring the court to conclude that plaintiffs' donning and doffing activities constitute principal activities sufficient to start the continuous workday. As will be explained, genuine issues of material fact exist as to whether employees may change clothes at home or whether they are required to change clothes at the bakery. Thus, even assuming that the court agreed with the parties that this fact was dispositive of whether plaintiffs' donning and doffing activities constitute principal activities for purposes of the continuous workday rule,[3] the court, on this record, cannot decide whether plaintiffs' clothes-

---

[3]In support of its argument that permitting employees to change at home ensures that such clothes changing is not a principal activity, defendant relies primarily on a May 31, 2006 advisory memorandum issued by the Department of Labor opining that changing into required gear is not a principal activity if employees have the option of changing into that gear at home. The same memo supports plaintiffs' suggestion that clothes-changing is necessarily a principal activity when the employer requires that clothes-changing take place on the premises. Because it is not required to do so in analyzing the parties' motions, the court declines to decide at this juncture whether location in and of itself is the controlling test. *See Bamonte v. City of Mesa*, 598 F.3d 1217 (9th Cir. 2010) (adopting bright-line "location rule" that controls whether donning and doffing are principal activities). As will be explained, however, the court believes that the location issue is an important consideration in the principal activity analysis.

changing in the context of this case is a principal activity.

Defendant contends that the undisputed facts demonstrate that its employees have the option of changing clothes at home and are free to do so at any time.[4]  The record does not support this contention.  Indeed, defendant's own evidence suggests that defendant if not requires then strongly encourages employees to change clothes on the premises.  Mark LaFond, defendant's Human Resources Manager at the Kansas City, Kansas bakery since 2000 testified that defendant's "practice" is that "employees do not wear their uniforms home" although that practice is not a "hard and fast policy."  The testimony of various employees submitted by defendant further indicates that defendant's practice was that employees should not change clothes at home.  Employee Akeela Williams testified that she "snuck" out wearing her uniform on occasion, but stopped doing that after defendant held a staff meeting in which management indicated that "people were going to get written up for wearing their uniforms home."  Employee Susan Voyles testified that during the summer of 2010 or 2009 the guards stationed at the plant entrance were stopping employees who were attempting to leave in their uniforms and were advising those employees that they were not allowed to wear their uniforms outside the plant. Employee Edward Dewayne Fry testified that he attended a work meeting in the last two years

---

[4]The court notes that defendant has not endeavored to explain whether it means that employees are wearing only the required shirt, pants and shoes to and from work or whether it means to suggest that employees are also wearing required accessories to and from work as well, such as bump caps, ear plugs, hair nets and safety glasses.  Because they have not explained what exactly its employees are wearing to and from work, it has not addressed whether and to what extent any distinction is significant in the principal activity analysis.

during which management advised employees that they were not permitted to wear uniforms home. Finally, employee George Brecht, an employee on the third shift, testified that at some point during 2009 a member of management began writing down the names of third-shift employees who were wearing their uniforms home and that he "took that seriously" and did not wear his uniform home after that point. Based on this evidence alone, a reasonable jury could conclude defendant does not permit its employees to change clothes at home and defendant's summary judgment motion must be denied.

In any event, plaintiffs' evidence further demonstrates that summary judgment in favor of defendant is not appropriate. In response to defendant's motion and in support of their own motion, plaintiffs have submitted an excerpt from defendant's employee handbook (or, as defendant calls it, defendant's Employee Safety Handbook) which specifically states that "Uniforms are provided to employees and must remain captive within the bakery. This means uniforms will be kept on-premises and employees will change into uniforms upon arrival to work and change out of uniforms when work is completed each day." Defendant concedes that the handbook in which this policy appears has been in use since 2009 but contends that, in reality, there is no such policy. Plaintiffs have also submitted a document produced by defendant during discovery that is dated November 23, 2010 and has as its subject "Good Manufacturing Practices" for the Kansas City bakery. This document states "Company-approved and issued clothing (e.g., smocks, uniforms, etc.) including footwear will not be worn outside the facility grounds." Again, defendant does not dispute that it issued this statement in November 2010, but

11

contends that in reality there is no such policy.  It is undisputed, however, that there is no written policy stating that employees are permitted to wear their uniforms home.

That having been said, a reasonable jury might also conclude that defendant does permit its employees to change clothes at home and, for that reason, the court also denies plaintiffs' motion for summary judgment.  Significantly, there is no evidence that any employees have ever been disciplined in any way for wearing uniforms to or from home.  Defendant has also produced evidence suggesting that, while it has not formally issued a policy that permits employees to wear uniforms to and from home, it has attempted to "spread the word" that employees are free to take their uniforms home.  For example, Mary Thomas, defendant's Employee Relations Manager at the Kansas City bakery, testified that if employees ask her, she tells them that they may wear their uniforms home and may wear their uniforms to work.

For the foregoing reasons, the record does not permit the court to conclude, as a matter of law, that defendant does or does not permit its employees to change clothes at home.  Thus, even assuming that the court, as urged by defendant, agreed that clothes changing can never be a principal activity when employees are permitted to change clothes at home, the court could not conclude at this juncture that clothes changing in the context of this case is not a principal activity.  Similarly, even assuming that the court agreed, as urged by plaintiffs, that clothes changing necessarily is a principal activity when employees are required to change clothes on the premises, the court could not conclude that clothes changing here is a principal activity.

Nonetheless, the court is comfortable that whether employees are permitted to change

12

clothes at home or whether they are required to change clothes on the premises is an important factor to be considered in the overall analysis of whether clothes changing is a principal activity. *See DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 747 F. Supp.2d 1043, 1053-54 (E.D. Wis. 2010) (collecting authorities regarding how location of donning and doffing affects compensability analysis). For this reason, the court rejects the parties' suggestions that the court–even if it finds disputed factual issues on the nature of defendant's uniform policy–can render a determination on whether plaintiffs' clothes changing is a principal activity. For if the jury concludes that employees are permitted to don and doff at home, then that conclusion may well affect the analysis of whether clothes changing is a principal activity. Similarly, if the jury concludes that employees are not permitted to don and doff at home but are required to don and doff at the plant, then that conclusion also bears on the principal activity analysis. Both motions, then, must be denied on this issue. *See id.* at 1053-54 (denying motion for summary judgment on principal activity issue where factual issues existed as to whether employer required employees to change clothes on the premises or whether they were free to change at home).

**IV.     Whether Plaintiffs "Worked" in Excess of 40 Hours for Purposes of the FLSA**

Defendant also contends that they are entitled to summary judgment on all claims because plaintiffs in the bakery only work 7 hours and 10 minutes per 8-hour shift (in light of two 25-minute paid breaks that plaintiffs receive) and typically work 5 shifts per week such that, under the best case scenario for plaintiffs, the amount of time at issue in this case does not implicate

the FLSA's minimum wage or overtime provisions in any respect.  According to defendant, because plaintiffs are only performing 7 hours and 10 minutes of compensable work each day (or 35 hours and 50 minutes of compensable work per work week), they would still be well under the FLSA's 40-hour threshold even considering the additional time at issue here

Plaintiffs contend in response that the fact that defendant has agreed in the collective bargaining agreement to treat the 25-minute paid breaks as "time worked" for purposes of calculating overtime within the Bakery is dispositive and requires that the paid breaks count toward the 40-hour FLSA threshold (thereby eliminating the 50-minute "cushion" relied upon by defendant).  Defendant then criticizes plaintiff for not responding to the "substance" of defendant's argument (and for failing to come forward with evidence that plaintiffs actually performed "work" for more than 40 hours each week) and accuses plaintiff of "mixing applies and oranges" because, according to defendant, what the collective bargaining agreement provides and what the FLSA requires are "two entirely separate matters."

In fact, plaintiffs' argument is supported by a regulation implemented by the Department of Labor that appears to be directly on point and entirely ignored by defendant.  Indeed, under the pertinent regulations, the FLSA requires that when the parties have expressly agreed to treat paid breaks as "hours worked," then those hours must be included in wage and overtime calculations for purposes of the FLSA:

> In some cases an agreement provides for compensation for hours spent in certain types of activities which would not be regarded as working time under the Act if no compensation were provided.  Preliminary and postliminary activities and time spent in eating meals between working hours fall in this category.  The

agreement of the parties to provide compensation for such hours may or may not convert them into hours worked, depending on whether or not it appears from all the pertinent facts that the parties have agreed to treat such time as hours worked. . . . [T]he agreement of the parties will be respected, if reasonable.

> *(a) Parties have agreed to treat time as hours worked*. Where the parties have reasonably agreed to include as hours worked time devoted to activities of the type described above, payments for such hours will not have the mathematical effect of increasing or decreasing the regular rate of an employee if the hours are compensated at the same rate as other working hours. The requirements of section 7(a) of the Act will be considered to be met where overtime compensation at one and one-half times such rate is paid for the hours so compensated in the workweek which are in excess of the statutory maximum.

29 C.F.R. § 778.320; *Nelson v. Waste Management of Alameda County, Inc.*, 33 Fed. Appx. 273, 273 (9th Cir. 2002) (meal periods treated as hours worked must be included in wage and overtime calculations under FLSA); *see also Chavez v. City of Albuquerque*, 13 WH Cases 2d 419 (D.N.M. 2008) (section 778.320 indicates that when an employer agrees to treat a lunch break as "hours worked," then the agreement will be respected and the hours will be treated as hours worked under the FLSA; contrasting agreement to count as "hours worked" paid vacation time and concluding that such an agreement will not bind an employer to count those hours towards the statutory overtime threshold). Because defendant has not adequately addressed the effect of its agreement to treat the 25-minute paid breaks as "hours worked," it has not shown that it is entitled to summary judgment on this issue.

## V.     Defendant's De Minimis Defense

Defendant maintains that the time plaintiffs spend walking to and from the time clock,

15

even if otherwise compensable, cannot be included in calculating hours worked in a week because the amount of time spent walking "is so 'insubstantial and insignificant' that it ought not to be included in the work week." *See Reich v. Monfort, Inc.*, 144 F.3d 1329, 1333 (10th Cir. 1998) (quoting *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 693 (1946)). As the Circuit explained in *Monfort*, "a few seconds or minutes of work beyond the scheduled working hours . . . may be disregarded. Split-second absurdities are not justified.. . . . It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." *Id*. (quoting *Mount Clemens*, 328 U.S. at 692). By way of background, plaintiffs' expert opines that the average time Bakery workers spend walking to and from the time clock is 4 minutes and 47 seconds and the longest time a worker spends walking to and from the time clock is 8 minutes and 8 seconds. In support of its motion for summary judgment, then, defendant directs the court to numerous cases (notably, none from the Tenth Circuit or even within the Tenth Circuit) essentially holding that "anything under 10 minutes is de minimis as a matter of law."

The motion is denied. As highlighted by plaintiffs in their response, the Tenth Circuit has never adopted a bright-line "10 minute" rule and instead applies the test adopted by the Ninth Circuit in *Lindlow v. United States*, 738 F.2d 1057 (9th Cir. 1984). *See id.* Under *Lindlow*, the first step is to determine "the amount of daily time spent on the additional work." *Id*. & n.1 (quoting *Lindlow*, 738 F.2d at 1062). Once the amount of daily time is determined, the court looks to three factors to determine whether that time is de minimis: "(1) the practical

16

administrative difficulty of recording the additional time; (2) the size of the claim in the aggregate; and (3) whether the claimants performed the work on a regular basis." *Id*. at 1333-34 & n.1 (quoting *Lindow*, 738 F.2d at 1062-63). Here, the court need not address these three factors because defendant has not shown for summary judgment purposes that it has accurately calculated "the amount of daily time spent on the additional work" as required under the initial step of *Lindlow*.

While defendant argues that plaintiffs spend between roughly 5 and 8 minutes each day walking to and from the time clock, defendants do not address in any respect the additional amount of time spent by plaintiffs during the work day on other activities that plaintiffs allege are compensable activities. Specifically, defendant has not addressed whether and to what extent it must include in its calculations the time plaintiffs spend after clocking in but before their "shift time" or "gang time" pay starts during which they allegedly gather required tools and other equipment for their specific job duties. Defendant does not compensate its workers for this time and such time would not be included in the "walking time" measured by the parties' experts. Similarly, at the end of their paid shift time, defendant's Bakery workers spend additional time returning tools and equipment that they obtained prior to the start of their shifts but prior to the time when they clock out. Workers are not compensated for this time and it also is not included in the "walking time" measured by the parties' experts. Significantly, even after plaintiffs highlight this additional time in their response brief, defendant declined to address this additional time in any respect in its reply brief. Defendant, then, has not shown that it is entitled to

17

summary judgment on the de minimis defense.

**VI.     Defendant's § 259(a) Defense**

Defendant contends that it is entirely shielded from liability for plaintiffs' claims (at least through June 16, 2010) because it relied in good faith on DOL opinion letters in deciding not to compensate its workers for donning, doffing and related walking time.  Under the Portal to Portal Act, "no employer shall be subject to liability or punishment . . . under the [FLSA] . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval or interpretation of the [Administrator of the DOL's Wage and Hour Division] . . . ."  *Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1231 n.7 (10th Cir. 2008) (quoting 29 U.S.C. § 259(a)).   Thus, to show that it is entitled to be insulated from liability under 259, defendant must show that it acted (1) in good faith; (2) in conformity with; and (3) in reliance on the DOL's opinion letters.  *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 907 (9th Cir. 2003).[5]

According to defendant, it was named as a defendant in a February 2004 lawsuit stemming from its pay practices at its Lancaster, Pennsylvania plant, including its failure to pay plant employees for donning, doffing and related walking time.  In light of that case, defendant asked its in-house counsel, in February 2004, to provide advice as to the continuation of

_____

[5]The DOL considers its Opinion Letters to constitute "rulings" for purposes of § 259(a).  *See* 29 C.F.R. §790.17(d).

18

defendant's long-standing practice of not compensating employees for donning, doffing and related walking time. Defendant's counsel concluded that its pay practices were consistent with § 203(o) and that defendant need not change those practices. Once the lawsuit was dismissed in March 2005, defendant's in-house counsel met with defendant's Director of Labor Relations and again advised that its pay practices did not need to be changed. At that time, defendant's in-house counsel shared a copy of the June 6, 2002 DOL Opinion Letter which, in a shift from its prior position narrowly interpreting "clothes" for purposes of § 203(o) to exclude personal protective equipment (PPE), broadly interpreted "clothes" to include PPE. According to an affidavit filed by defendant's in-house counsel, he relied upon the 2002 Opinion Letter and his earlier research to advise defendant in March 2005 that it need not change its pay practices.

Defendant next asserts simply that

> in May 2007, the DOL Administrator issued another Opinion Letter. Apart from declaring that employers 'may continue to rely on the [June 6, 2002] letter for practices outside states within the jurisdiction of the Ninth Circuit,' the Administrator explained that 'activities covered by § 3(o) cannot be considered principal activities and do not start the workday. Walking time after a § 3(o) activity is therefore not compensable, unless it is preceded by a principal activity.' Wage & Hour Div., U.S. Dep't of Labor, Opinion Letter, 2007 WL 2066454, at 2 (May 14, 2007).

According to the affidavit of defendant's in-house counsel, when the May 2007 Opinion Letter was issued, a discussion ensued about whether defendant needed to revisit its pay practices and, because the Opinion Letter was consistent with defendant's practices, defendant again concluded that it did not need to change its practices. Based on these facts, defendant contends that its

19

compensation practices have been "entirely consistent" with prior DOL pronouncements[6] and highlights that another district court has found that defendant relied in good faith on the May 2007 DOL Opinion Letter.

Defendant's motion on this issue is denied because defendant's evidence does not demonstrate, as a matter of law, that defendant relied in good faith on the DOL Opinion Letters in connection with implementing or maintaining the compensation practices at issue in this case.[7] To begin, defendant's argument ignores certain damages sought by plaintiffs in this case–for time spent after "clocking in" but before the start of "gang time" or "shift time" pay. Plaintiffs allege that during this time they are gathering required equipment or tools and otherwise readying themselves to begin a shift. As noted by plaintiffs in the pretrial order, they seek to be compensated for all time during the "continuous workday." Nothing in the Opinion Letters allegedly relied on by defendant touches on the issue of whether defendant should be compensating its employees for the time spent by plaintiffs after clocking-in but before the start of gang time pay and defendant does not address any analysis it may have undertaken concerning whether to compensate employees for that time.

---

[6]On June 16, 2010, the DOL issued an Opinion Letter changing its interpretation of "clothes" under § 203(o) yet again, reverting back to its narrow interpretation that excludes PPE from that definition and further concluding that clothes changing covered by § 203(o) may be considered a principal activity for purposes of the continuous workday rule.

[7]Because the court denies the motion on the merits, it declines to address plaintiff's alternative argument that the motion should be denied based on defendant's failure to disclose defendant's in-house counsel as a witness until after the deadline for disclosing witnesses had expired.

With respect to defendant's decision not to compensate employees for donning, doffing and related walking time, defendant's evidence demonstrates that the 2002 and 2007 DOL Opinion Letters supported the practices already firmly in place at defendant's Kansas City plant. But defendant's evidence suggests that its in-house counsel did not review the 2002 Opinion Letter himself or with anyone in management until 2005, long after the 2004 decision was made to continue defendant's long-standing pay practices. Thus, while the 2002 Opinion Letter may have reinforced defendant's earlier decision to continue to not pay its employees for donning and doffing and related walking time, it cannot be said on this record that defendant relied on that Opinion Letter in reaching that decision. Moreover, and perhaps more significantly, the 2002 Opinion Letter focused solely on the meaning of "clothes" for purposes of § 203(o)–an issue that this court has resolved in favor of defendant. The 2002 Opinion Letter did not purport to address the compensability of post-donning or pre-doffing walking time. Thus, even if defendant could show that it relied in good faith on the 2002 Opinion Letter, it has not shown how that Opinion Letter would insulate it from plaintiff's walking time claims.

While the 2007 Opinion Letter addressed post-donning and pre-doffing walking time, and concluded that such time would not be compensable if the donning and doffing activities were § 203(o) activities, defendant nonetheless has not shown that it relied in good faith on that Opinion Letter. As noted, defendant had determined not to pay its employees for donning, doffing or related walking time long before the issuance of the 2007 Opinion Letter. Thus, while the issuance of the 2007 Opinion Letter was favorable to defendant in the sense that defendant

was not required to revisit or change its pay practices in light of the Opinion Letter, it cannot be said as a matter of law that defendant relied on that Opinion Letter or even that it was influenced by that Opinion Letter in deciding not to pay its employees for walking time.  Moreover, although defendant contends that the 2007 Opinion Letter shields it from liability until June 16, 2010–when the DOL reversed its position and stated that § 203(o) clothes changing may be a principal activity–defendant does not address whether it analyzed or considered the clear weight of authority that, prior to June 16, 2010, had rejected the DOL's position.  *See* 29 C.F.R. § 790.15(a) (employer seeking benefit of defense must show it had no knowledge of circumstances "which ought to put him upon inquiry").  Indeed, by the time the DOL reversed its position in June 2010, it acknowledged that its 2007 Opinion Letter was contrary to the clear weight of authority and that the majority of district courts had rejected the Opinion Letter.

Finally, the cases relied upon by defendant in which the district court concluded that the defendant had relied in good faith on the DOL's Opinion Letters are distinguishable from the facts here.  In *Sisk v. Sara Lee Corp.*, 590 F. Supp. 2d 1001, 1012-13 (W.D. Tenn. 2008), the district court's good faith conclusion was based in large part on the fact that the defendant–despite the 2002 Opinion Letter stating that certain pre- and post-shift activities were not compensable–continued to pay its employees for an additional 10 minutes per shift for those activities.  In *Franklin v. Kellogg Co.*, 2009 WL 6093442, at * (W.D. Tenn. 2009), the district court did not analyze whether Kellogg had actually relied on the 2007 Opinion Letter; rather, it analyzed Kellogg's reliance on the 2002 Opinion Letter.  As noted above, even if defendant

22

relied on the 2002 Opinion Letter, defendant has not shown how such reliance insulates it from the specific claims in this case.

For the foregoing reasons, the court denies defendant's motion for summary judgment on its § 259(a) defense.

## VII.   Liquidated Damages and the Applicable Statute of Limitations

The FLSA provides that an employer who violates the Act by failing to pay compensable wages is ordinarily liable for the unpaid wages and an additional equal amount as liquidated damages. 29 U.S.C. § 216(b).  To avoid such damages, the employer must show "to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260.  Good faith is a "subjective test that requires 'the employer have an honest intention to ascertain and follow the dictates of [the FLSA].'" *Fowler v. Incor*, 279 Fed.Appx. 590, 599–600 (10th Cir. 2008) (quoting *Dep't of Labor v. City of Sapulpa*, 30 F.3d 1285, 1289 (10th Cir. 1994)).  Reasonableness "imposes an objective standard by which to judge the employer's behavior." *Id*. at 600 (quotation omitted).  Only in those instances where the court finds that the employer meets this burden, it may, "in its sound discretion," deny liquidated damages. *Id*. (quoting *Pabst v. Okla. Gas & Elec. Co.*, 228 F.3d 1128, 1136 (10th Cir. 2000)).

Moreover, a two-year statute of limitations applies to an action for unpaid wages under the FLSA, except where an employer acts willfully, which extends the limitations period to three

23

years.  29 U.S.C. § 255(a).  The employee bears the burden of proving that the employer acted

willfully.  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988).  For purposes of the

statute of limitations, "willful" means "the employer either knew or showed reckless disregard

for the matter of whether its conduct was prohibited by [the FLSA]."  *Id*. at 133.

Defendant seeks a ruling from the court that, as a matter of law, it acted in good faith and

without willfulness with respect to the alleged FLSA violations at issue in this case.  Defendant

relies on the same evidence to support its argument that it acted in good faith as it does to

support its argument that it acted without willfulness. According to defendant, at all times it

reasonably attempted to determine its obligations under the FLSA amidst conflicting judicial

standards and a lack of clarity as to the requirements of the FLSA. In response, plaintiffs assert

that summary judgment is inappropriate on the issues of good faith and willfulness because the

evidence shows that defendant did not rely on case law, DOL Opinion Letters, or the advice of

counsel in formulating its compensation practices–many years ago, it simply decided not to pay

its employees for time spent throughout the continuous workday and, as luck would have it, the

DOL, after the fact, turned out Opinion Letters that conformed with defendant's approach.

The court believes that the issues of good faith and willfulness, at least in the context of

this case, must be resolved at trial.  Defendant has simply not addressed the issues of good faith

and willfulness with any particular focus as to plaintiffs' remaining claims in this lawsuit.  While

defendant relates its efforts to "get it right" with respect to donning and doffing activities (again,

claims that the court has resolved in defendant's favor), defendant devotes very little of its brief

to the analysis, if any, that it undertook with respect to walking time in the plant and does not

mention in any respect plaintiffs' claims relating to time spent after clocking in but before the

start of gang time pay.  It would be premature, then, to resolve these issues at this juncture when

defendant has not sufficiently marshaled the evidence to focus squarely on the claims here.[8]


## VIII.  Rounding Policy

Finally, plaintiffs move for summary judgment on defendant's purported time-clock

"rounding" policy which, plaintiffs assert, violates the FLSA as a matter of law.  As described

by plaintiffs, defendant's policy permits employees to clock in up to 10 minutes prior to the start

of a shift but defendant then "rounds" that time away entirely by paying employees on a "gang

time" or "shift time" basis.  Plaintiffs concede that time clock rounding is generally permitted

under applicable FLSA regulations but maintain that defendant's policy is unlawful under the

regulations because it consistently results in a failure to pay employees for time worked.  The

regulation relied upon by plaintiffs states as follows:

> *"Rounding" practices.*  It has been found that in some industries,
> particularly where time clocks are used, there has been the practice
> for many years of recording the employees' starting time and
> stopping time to the nearest 5 minutes, or to the nearest one-tenth

---

[8]Even the primary case relied upon by defendant supports the court's conclusion that
these issues cannot be resolved at this juncture.  According to defendant, the court should
follow the reasoning of the district court in *Perez v. Mountaire Farms, Inc*., 610 F. Supp.2d
499 (D. Md. 2009), *aff'd in part*, *vacated in part*, 650 F.3d 350 (4th Cir. 2011).  In that case,
however, the district court found that the defendant acted in good faith and without
willfulness after a one-week bench trial on compensability issues.  *Id*. at 502.

or quarter of an hour.  Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work.  For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

29 C.F.R. § 785.48(b).

The motion is denied as plaintiffs have not shown that defendant's policy is, in fact, a rounding policy.  Indeed, the undisputed facts indicate that defendant utilizes time clocks in the work place solely for attendance purposes and not, as required by the regulation, for "computing working time."  It may be that plaintiffs are entitled to compensation for the time they spend gathering tools and equipment after they clock in and before "gang time" pay starts *(i.e.*, the time that plaintiffs contend is "rounded" away),  but plaintiffs have not shown for summary judgment purposes that defendant's failure to compensate for this time violates the regulation concerning "rounding" practices.


**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' motion for summary judgment (doc. 262) is **denied;** and defendant's motion for summary judgment (doc. 266) is **denied**.


**IT IS SO ORDERED.**

26

Dated this 13th day of December, 2011, at Kansas City, Kansas.


s/ John W. Lungstrum
John W. Lungstrum
United States District Judge