IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

Joseph L. McDonald, Mavis A.
McDonald and Lyndon Ellis,

      **Plaintiffs,**

v.                                      Case No. 08-2473-JWL

**Kellogg Company,**

      **Defendant.**

### MEMORANDUM & ORDER

Plaintiffs, individually and on behalf of others similarly situated, filed this wage and hour suit against defendant alleging violations of the overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. Specifically, plaintiffs, all current or former hourly production employees at defendant's bakery facility in Kansas City, Kansas, allege that defendant failed to compensate them for time spent performing activities such as donning and doffing required uniforms and gear; gathering required materials, tools and equipment; and post-donning and pre-doffing walking to and from work stations. The parties stipulated to conditional certification and notice to the putative collective class–a class that now is comprised of approximately 385 plaintiffs. Discovery has now closed, the court has resolved all summary judgment motions, and this matter is presently before the court on defendant's motion to decertify (doc. 265). The motion is denied.

In its motion, defendant asserts that the named plaintiffs are not similarly situated to any opt-in plaintiffs because each plaintiff's claims are highly individualized and no common proof

exists among plaintiffs. Defendant further asserts that decertification is required because any trial of this case will be unmanageable. The motion is denied. Without a doubt, common questions and answers exist in this case and any individual disparities are easily outweighed by those common questions and answers. Moreover, other donning, doffing and walking time cases that courts–including this court–have permitted to go forward as collective actions have proceeded successfully to trial or other satisfactory resolution. *See Andrako v. U.S. Steel Corp.*, 788 F. Supp. 2d 372 (W.D. Pa. 2011); *Garcia v. Tyson Foods, Inc.*, No. 06-2198 (D. Kan. 2011) (jury trial held in March 2011);[1] *In re Tyson Foods, Inc.*, 694 F. Supp. 2d 1372, 1380 (M.D. Ga. 2010 (citing cases). The court is convinced that the collective action device is entirely appropriate in this case and that any trial of this case can be managed efficiently.

I.  **Facts**[2]

Since 2001, defendant Kellogg Company has owned and operated a bakery facility in Kansas City, Kansas. Prior to that time, the facility was owned and operated by the Keebler Company. At all times pertinent to this lawsuit, hourly production employees at the bakery facility have been represented by Local 184-L Retail, Wholesale & Department Store Union. Named plaintiffs Joseph McDonald, Mavis McDonald and Lyndon Ellis are all hourly

---

[1]The undersigned transferred the *Garcia* case to Judge Marten of this court for trial purposes in light of scheduling conflicts.

[2]The facts set forth here are nearly identical to the court's statement of facts issued in connection with its resolution of the recent summary judgment motions. Nonetheless, the court restates those facts here for the reader's convenience.

production employees at the bakery facility in Kansas City, Kansas.

Hourly production employees at the facility are required to wear a company-issued uniform consisting of a shirt, pants and shoes. The parties vigorously dispute whether employees are permitted to change into and out of their uniforms at home or whether they are required to change at the bakery. In addition to the company-issued uniform, all hourly production employees are required to wear certain company-issued accessories, including hair nets, ear plugs and safety glasses. If applicable, employees are also required to wear beard guards. Hair nets, ear plugs and beard guards are maintained in dispensers just outside the locker rooms and just outside work areas so that employees typically obtain these items after leaving the locker room while walking to their work areas. Safety glasses are typically maintained in employees' lockers. A handful of other items are maintained in employees' lockers but are not common to all employees, such as bump caps and various tools used by employees in certain departments.

Prior to the start of each shift, hourly production employees are required to "clock in" at his or her designated work area utilizing employee time clocks that are located outside each work area. Employees, however, are not compensated beginning at the time they "clock in." Rather, defendant pays its hourly production employees on a "shift time" basis. Thus, if the morning shift begins at 6:00a.m., then the employees working the morning shift are paid beginning at 6:00am regardless of whether an individual employee clocked in at 5:52a.m. or 6:03 a.m. Hourly production employees, then,. are not compensated for many activities that occur prior to the start of their actual shift time, such as time spent changing into uniforms (which the court has

3

previously held is not compensable by virtue of section 203(o)); walking from the locker rooms to the production floor; and obtaining tools maintained on the production floor.

At the end of the employees' shifts, employees remove and return whatever gear and tools they have obtained from their work areas and, as employees walk back to the locker rooms, they place their ear plugs, hair nets and beard guards in bins designated for those soiled items. Once the employees reach the locker rooms (assuming they change out of their uniforms at work), they change out of their uniforms and leave their safety glasses and any other items (e.g., bump cap, scraper) in their lockers. Again, because defendant pays its hourly production employees on a "shift time" basis, these employees are not compensated for the time spent after the end of a shift, including time spent returning tools obtained on the production floor; walking to the locker rooms; as well as the legally non-compensable time for changing out of uniforms.

## II.   Standard

In analyzing defendant's motion to decertify at the conclusion of discovery, the "overriding question" remains whether the named plaintiffs and the opt-in plaintiffs are "similarly situated" for purposes of § 216(b). *Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001). The standard at this stage, however, is stricter than that utilized at the "notice stage," and the court is required to review several factors, including any disparate factual and employment settings of the individual plaintiffs; the various defenses available to defendant which appear to be individual to each plaintiff; and fairness and procedural

considerations. *Id*. at 1102-03.[3]  The court may also decertify a collective action for trial management reasons. *Id.* at 1105.

## III.     Factual Disparities

Defendant first argues that decertification is required in this case in light of "significant variations" in each individual plaintiff's allegations. According to defendant, plaintiffs provided widely varying answers as to numerous key issues in this case, including whether a particular employee changes into his or her uniform at home or at the facility; whether a particular employee's uniform is "necessary" to that employee's principal work activities; what specific pre- and post-shift activities an employee engages in; and the amount of time each plaintiff spends walking within the facility.[4]  As will be explained, the alleged differences highlighted by defendant do not require decertification.

Defendant suggests that the answer to whether a plaintiff changes at home or at the

---

[3]Defendant contends that the court must assess these factors through the lens of the Supreme Court's decision in *Dukes v. Wal-Mart Stores, Inc*., 131 S. Ct. 2541 (2011) such that plaintiffs must also demonstrate that the resolution of common questions is common to the class. Plaintiffs dispute whether *Dukes* applies to FLSA collective actions. The court need not address this issue. Even under the heightened standard articulated in Dukes, the court would decline to decertify this case. To be sure, there are common answers to common questions here such that a jury can determine principal liability questions "in one stroke." *Id*. at 2551.

[4]Defendant also contends that plaintiffs' factual circumstances vary regarding whether each plaintiff actually worked more than 40 hours in a given week in light of the two paid breaks provided by defendant per shift. The court need not consider this specific argument, as it previously rejected this defense as a matter of law in connection with ruling on the motion for summary judgment.

facility varies widely among each of the 385 plaintiffs. While this may be true, the jury will not and need not resolve this issue on a plaintiff-by-plaintiff basis. Indeed, as argued by defendant in its motion for summary judgment, if the jury concludes that defendant permits employees to change clothes at home, then that "option" applies to all employees regardless of whether an individual employee elects to change at home or at the facility. Thus, it is defendant's overall changing policy that is significant to the principal activity analysis and relevant testimony at trial will be limited to the nature of defendant's policy. *See* Department of Labor Wage & Hour Adv. Memo No. 2006-2 (May 31, 2006) ("[I]f employees have the option and ability to change into the required gear at home, changing into that gear is not a principal activity, even when it takes place at the [place of employment]." Accordingly, the specific changing practices of any given individual plaintiff are only relevant to the extent they can be shown to shed light on that policy, and the court will certainly not permit cumulative evidence of that nature.

Defendant further contends that plaintiffs have widely varying beliefs as to whether his or her uniform (which defendant contends is specific to that employee) is "necessary" to his or her work activities or whether that uniform is primarily for the employee's own benefit. Again, the court disagrees that differences among plaintiffs in this regard require decertification. Clearly, an individual plaintiff's subjective belief as to whether his or her uniform is "necessary" to his or her work activities is not dispositive of the principal activity issue and that issue will not be resolved on a plaintiff-by-plaintiff basis. Thus, while plaintiffs themselves might answer the necessity question differently, the jury will reach one common answer for all plaintiffs who

6

wear the same uniform and perform similar job tasks. Testimony from any plaintiffs concerning whether his or her uniform is "necessary" to his or her work activities will thus be permitted only to the extent any such non-cumulative testimony would be relevant in arriving at those common answers.

While defendant also contends that each plaintiff engages in different and unique pre- and post-shift activities, those activities are irrelevant to a determination of whether defendant is required to compensate employees for walking time and the court will not permit such testimony. The compensation determination will be based on whether the clothes-changing activities in this case are principal activities such that the continuous workday rule is triggered. If that rule is triggered, then plaintiffs are entitled to compensation for reasonable time spent after changing clothes (subject to a de minimis determination) regardless of what activities they engage in after changing clothes. Of course, if a plaintiff comes to work 45 minutes early, changes clothes and then socializes for 40 minutes prior to that employee's shift, defendant is not required to compensate the employee for the whole 40 minutes. In this court's experience, upon a liability determination in this type of case, a determination of the reasonable walking time is made such that the employer may add an additional "x" number of minutes to each employee's shift pay to capture those minutes that must be compensated. For this reason, too, the court is not persuaded by defendant's stated concerns about the variances among each plaintiff as the actual amount of time spent walking in the plant. None of the issues in this case will be resolved based on actual walking or waiting time. *See Metzler v. IBP, Inc.*, 127 F.3d 959, 962 (10th Cir. 1997) (affirming

district court's decision that employees were entitled to compensation based on the reasonable time as opposed to actual time spent performing activities).

## IV.  Individualized Defenses

Defendant next asserts that it has "highly individualized" defenses as to each individual plaintiff–namely, that each plaintiff's walking time is de minimis and that each plaintiff has been fully compensated for purposes of the FLSA through the use of "gap time." According to defendant, these defenses require an investigation into each individual's diverse factual and employment settings and will require defendant to present highly individualized evidence at trial. The court disagrees. To begin, the court, in a memorandum and order issued earlier this week, has rejected defendant's "gap time" defense as a matter of law.[5] That defense, then, is irrelevant to the resolution of this motion. With respect to the de minimis issue, defendant contends that the specific amount of time each plaintiff spends walking will vary from plaintiff to plaintiff. While that may be true, defendant will not be required or permitted to establish the exact amount of time that each plaintiff spends walking in the plant. Rather, it is apparent from defendant's briefing that it intends to argue that any time under a certain number of minutes is de minimis such that defendant's evidence may be targeted to larger subsets of plaintiffs (for example, the five categories of plaintiffs measured by plaintiff's expert based on the particular time clock–and

---

[5]Specifically, defendant argued that employees do not work a 40-hour workweek regardless of the uncompensated time at issue here in light of two paid breaks they receive each shift.

resulting walking distance–utilized by each plaintiff) to establish reasonable walking times for each subset of plaintiffs.[6] Defendant, then, has not shown that decertification is appropriate in light of its asserted defenses. *See Andrako v. U.S. Steel Corp.*, 788 F. Supp. 2d 372, 382 (W.D. Pa. 2011) (denying motion to decertify in donning and doffing/walking time case; argument that de minimis defense will overwhelm common issues is "weak" because that defense itself involves legal issues common to the class as a whole).

## V.     Fairness and Procedural Considerations

Defendant contends that this action must be decertified because any trial will be entirely unmanageable in light of sheer volume of witnesses and testimony and the "complex web of jury instructions" that will result from the vast amount of evidence. According to defendant, representative testimony is not available in a trial of this case because the circumstances surrounding each employee's wage claim vary from one plaintiff to the next–including, as noted earlier, whether a particular employee changes into his or her uniform at home or at the facility; whether a particular employee's uniform is "necessary" to that employee's principal work activities; what specific pre- and post-shift activities an employee engages in; and the amount

---

[6]Defendant contends that many plaintiffs engage in "non-compensable work" during "walking time," such as socializing with coworkers and suggests that each of these variances would need to be explored with each plaintiff. Defendant's argument assumes that its de minimis defense would be analyzed against the actual time that each plaintiff spends walking to the time clock. As noted earlier, the issues in this case will not be resolved based on actual walking times. This further undercuts defendant's argument that its de minimis defense requires highly individualized evidence.

9

of time each plaintiff spends walking within the facility.[7]

In fact, and as explained above, none of these topics require (and the court will not permit) individualized testimony from each plaintiff and the issues are readily susceptible to representative proof. *See Andrako*, 788 F. Supp. 2d at 382-83 (collective action alleging failure to compensate for donning, doffing and walking time can be tried through the use of representative testimony); *In re Tyson Foods, Inc.*, 694 F. Supp. 2d 1372, 1379-80 (M.D. Ga. 2010) (approving use of sample representative testimony as to amount of time it takes to don, doff and walk so long as representatives performed substantially similar work to non-testifying plaintiffs). As argued by defendant in its motion for summary judgment, if the jury concludes that defendant permits employees to change clothes at home, then that "option" applies to all employees regardless of whether an individual employee elects to change at home or at the facility. In other words, whether clothes-changing is a principal activity will not vary amongst each employee depending on where that employee elects to change clothes. It is defendant's overall policy itself that is significant to the principal activity analysis–not each individual employee's decision as to where he or she might change clothes on any given day. *See* Department of Labor Wage & Hour Adv. Memo No. 2006-2 (May 31, 2006) ("[I]f employees have the option and ability to change into the required gear at home, changing into that gear is not a principal activity, even when it takes place at the [place of employment]." Thus, defendant

---

[7]As noted earlier, the court will not permit testimony from each plaintiff concerning the actual amount of time spent by each employee walking to and from the time clock. This issue, then, is not a stumbling block to a manageable trial.

will not be permitted to examine all 385 plaintiffs as to their particular practices. It need only present evidence, as it did on summary judgment, sufficient to demonstrate to the jury that it provides its employees with the option of changing clothes at home.

Similarly, in the absence of any indication that each of the 385 plaintiffs wears a uniform that is distinct from the uniform of every other employee and performs tasks distinct from every other employee, the court will not permit individualized testimony as to whether each employee's uniform is "necessary" to that employee's principal work activities. To begin, all hourly bakery employees wear the same basic uniform and work in one of only five departments. Certainly, then, representative testimony can be used to examine whether and to what extent the standard uniform is "necessary" to work in each of the 5 departments. Moreover, to the extent uniform variances occur in terms of additional accessories, those are largely based on the job department in which the employee works. Presumably, then, defendant can elicit testimony from representative plaintiffs in each of the 5 departments at the bakery to ascertain any uniform variances and whether those variances relate to the specific job duties of those plaintiffs.

Finally, the court will not permit each plaintiff to testify about the nature of his or her pre- and post-shift activities. If plaintiffs' walking time is compensable in this case, it is by virtue of the continuous workday rule if that rule is triggered by the plaintiffs' donning and doffing activities. Pursuant to that rule, and assuming that defendant's de minimis defense is unsuccessful, plaintiffs are entitled to compensation for their reasonable walking and waiting time regardless of what "activities" they engage in during that time–even if those activities do

not benefit defendant–unless that time is otherwise specifically excluded under the FLSA. *See Perez v. Mountaire Farms, Inc*., 650 F.3d 350, 368 (4th Cir. 2011) (Under the continuous workday rule, employees are entitled to compensation for any activities which occur between the first and last principal activities.). Testimony, then, about what specific activities each plaintiff is or has engaged in between the first and last principal activities is largely irrelevant.

In sum, the court perceives no prejudice to defendant in proceeding as a collective action and believes that justice is better served in this case by proceeding as a collective action.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion to decertify collective action (doc. 265) is **denied.**

**IT IS SO ORDERED.**

Dated this 20th day of December, 2011, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
