## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## AT KANSAS CITY

| | | |
|---|---|---|
| Joseph L. McDonald, Mavis A. McDonald | ) | |
| and Lyndon Ellis, On Behalf of Themselves | ) | |
| and All Others Similarly Situated, | ) | |
| | ) | **Case No.  08-CV-2473 JWL** |
| **Plaintiffs,** | ) | |
| vs. | ) | |
| | ) | |
| The Kellogg Company, | ) | |
| **Defendant.** | ) | |

## MOTION AND MEMORANDUM FOR
## APPROVAL OF ATTORNEYS' FEES & COSTS

**COME NOW** Plaintiffs, by and through their counsel of record, and hereby move this Court to approve the attorneys' fees and costs sought in the Parties' Joint Stipulation of Settlement regarding claims under the Fair Labor Standards Act (FLSA) in the above captioned matter.

### INTRODUCTION

Plaintiffs respectfully suggest that the fees requested are fair and reasonable under the factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, (5th Cir. 1974). The fee requested represents a substantial discount from a fee calculated solely on a lodestar basis. And, in addition, when the fee request is measured against the multiple factors articulated in *Johnson,* Plaintiffs' proposition that the fees are fair and reasonable is further supported. The memorandum addresses these issues in greater detail in the order presented above.

### ANALYSIS

Ultimately, the fee was negotiated after participating in extensive settlement discussions in which the Parties were represented by competent counsel. Two days of formal settlement

discussions were presided over by John Phillips, Esq. of Husch Blackwell LLP, a mediator with

expertise in FLSA matters. As a result of these negotiations, the Defendant agreed to the fee

request made by Plaintiffs' counsel as set forth herein. Plaintiffs are asking that the Court

approve $275,000 as attorneys' fees and $37,116.43 as costs and expenses incurred in

prosecuting this matter. (Statements regarding expenses are attached hereto as Exhibit 1).

Calculated on a loadstar basis, the actual attorneys' fees incurred by Plaintiffs' counsel in

pursuing this litigation are $522,373.00.[1]  As such, counsel is requesting a payment of

$247,373.00 less than the actual attorney fees associated with the work performed by counsel in

prosecuting this matter. Furthermore, counsel will continue to incur fees in the administration of

the settlement, which will not be recovered. While Plaintiffs' counsel's fee request is slightly in

excess of the amount paid to Plaintiffs, such is not an unusual result in an employment matter

under a "fee shifting" statute. This is especially true where the claims involve unpaid overtime

compensation pursuant to the FLSA where the individual employees are each owed relatively

small sums of money.

---

[1]      Brady & Associates through its attorneys and paralegals incurred the following:

| Name | Hours | Rate | Total |
|---|---|---|---|
| Beth R. Cooper (paralegal) | 63.64 | 0 | $0 |
| K.C. Connealy (senior associate) | 507.5 | $325.00 | $164,937.50 |
| Diana M. Brady (paralegal) | 24.48 | 0 | $0 |
| Heather M. Lake (senior associate) | 41.14 | $325.00 | $13,370.50 |
| Kathy Corcoran (paralegal) | 188.95 | $80.00 | $15,116.00 |
| Layne Aingell (paralegal) | 756.78 | $80.00 | $60,542.40 |
| Mark A. Kistler (senior associate) | 58.20 | $325.00 | $18,915.00 |
| Matthew E. Osman (junior associate) | 100.58 | $225.00 | $22,630.50 |
| Michael F. Brady (partner) | 59.58 | $400.00 | $23,832.00 |
| Michael Hodgson (senior associate) | 621.18 | $325.00 | $201,883.50 |
| William L. Brady (paralegal) | 14.32 | $80.00 | $1,145.60 |
| **Total:** | **2,436.35** | | **$522,373.00** |

Brady & Associates has provided detailed time sheets in camera for inspection by the Court.

The prosecution of this litigation necessitated the briefing, discovery, research and other actions taken by counsel to pursue the rights of the class members.  Pursuing this case as a collective action and pursuing it in an efficient manner required expertise in a specialized area of the law.  Not only do collective action claims require specialized knowledge and skill, they pose substantial risk for counsel in terms of real dollars advanced and opportunity costs.  In this case, Plaintiffs' counsel vigorously litigated this matter since 2008 in order to obtain the settlement set forth in the Joint Stipulation of Settlement.[2]  Nothing short of the filing of this action and the events that have transpired in pursuing this action would have led to the result detailed in the Joint Stipulation of Settlement.  As such, Plaintiffs believe that the fees and costs incurred were reasonable and necessary.

In addition to attorneys' fees, Plaintiffs' counsel incurred actual out-of-pocket expenses for things such as  providing notice to more than 400 potential class members and arranging for depositions of more than 20 individuals scheduled by Defendant.  Furthermore, the largest out of pocket expense in the case was the time study performed over two days at Defendant's facility in Kansas City, Kansas.  During this time study, nationally renowned expert Dr. Kenneth Mericle was on site and conducted an extensive time study of more than 200 current employees through the use of Radio Frequency Identification technology.

As demonstrated above, this fee request will result in Plaintiffs' counsel being compensated significantly less than they would be if they were paid on a loadstar basis. Plaintiffs' counsel is significantly discounting their fee in order to achieve an expedient and

---

[2]     It is worth noting that Plaintiffs attempted on several occasions to resolve this matter short of all the litigation and discovery that took place.  The Parties first attempted mediation in June 2010 and were not successful. Thereafter, the Parties participated in extensive summary judgment briefing and Defendant filed a motion for decertification of the conditionally certified collective action.  Less than two months before the scheduled trial date, the Parties came to an agreed settlement. The Defendant certainly had the right to pursue its defenses vigorously before deciding to agree to a settlement.  However, that sequence of events should not operate to the Plaintiffs' detriment when seeking compensation for legal services.

positive resolution for its class members, as counsel believes this to be in their clients' best interest.

In light of the result achieved for their clients, Plaintiffs' counsel should not be denied their request for fees and costs.  Agreed upon fees are customary in nearly all class and collective settlements because both plaintiffs and defendants desire finality.   The Supreme Court has acknowledged and supported this reality by explaining:  "A request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (discussing fee awards in the context of a fee-shifting statute).  Indeed, the District Court of Kansas Local Rules encourage the Parties to reach an agreement regarding fees due in a legal matter on their own, and to only involve the Court when an agreement cannot be reached.  *See* D.Kan.L.Rule 54.2.  Moreover, as discussed below, the amount of the fee awarded to Plaintiffs' counsel will have no impact on the equitable funds being paid to the more than 350 Plaintiffs.

### *JOHNSON* FACTORS

Regarding the fees sought, the Tenth Circuit has concluded that the District Court should consider the 12 factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).  *Rosenbaum v. MacAllister*, 64 F.3d at 1439 1445 (10th Cir. 1995).  The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the question presented by the case; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorneys due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and

length of the professional relationship with the client; and (12) awards in similar cases. *Id.* The Plaintiffs respectfully suggest that a review of the *Johnson* factors supports the Plaintiffs' request for fees and costs.

### 1.      The Results Obtained (Factor 8):

In generating the settlement figures for the class members, Plaintiffs' counsel analyzed actual payroll records of all employees and matched that against a comprehensive time study to estimate the amount of off the clock time to which each employee was entitled.  Under the terms of the settlement, the 360 Plaintiffs will receive substantially all of the unpaid overtime compensation owed to them under the law as indicated by the relevant payroll records and the comprehensive time study.  Thus, the settlement provides an excellent result for class members. Plaintiffs' counsel vigilantly pursued this litigation on their clients' behalf.   In addition, Plaintiffs' counsel was able to ensure that the amount sought by Plaintiffs' counsel for fees and costs would not lower the amount paid to the 360 Plaintiffs.  In other words, reducing the amount of the proposed fees and costs would not enhance the recovery to the class members.

Further, Plaintiffs' counsel negotiated that the release of claims by the class members would not be general in nature.  Pursuant to the Joint Stipulation of Settlement, the opt-in Plaintiffs are releasing only wage and hour claims (and benefits related thereto) under applicable state and federal law.  The narrow nature of the release exemplifies the results achieved for the FLSA class.  *See Ramah Navaho Chapter v. Babbitt*, 50 F.Supp.1091, 1103-04 (D.N.M. 1998) (noting that the limited, rather than general, nature of the release as further evidence of an exceptional result in favor of class members).

**2.      Preclusion of Other Work by the Attorneys Due to this Case & Risks Due to Undesirability of Case (Factors 4 and 10):**

This litigation took over three and a half years, involved more than 20 depositions, two rounds of summary judgment briefing, extensive written discovery including over 350 sets of interrogatories to each opt-in Plaintiff, defense of a decertification motion by Defendant, and substantial other motion practice and administrative costs, including but not limited to, flying to and from out of state depositions, extensive analysis of document production by the Defendant and the comprehensive expert report detailing the off the clock time to which Plaintiffs were entitled.   As a result of the time and money demands placed on Plaintiffs' counsel by this litigation, counsels' caseload had to be limited and other work could not be pursued.  See *In re Oracle Sec. Litig.*, 131 F.R.D. 688, 693 (N.D. Cal. 1990) ("It is axiomatic that risk demands a premium; the greater the uncertainty of payment, the greater the payment that will be demanded.").

Plaintiffs' counsel are experienced in this area of the law and have, over time, gained particularized requisite skills necessary to prosecute these types of cases. The novelty and difficulty of the legal issues as to the "Section 203(o) defense" and the related "*de minimis*" defense were extreme.  Nonetheless, Plaintiffs' counsel have obtained substantial relief for the class placing themselves on the cutting edge of litigation concerning the nuances and complexities of the Section 203(o) defense as applied to the type of employees in the instant action.  In fact, at the time this case was filed, existing precedent suggested that Plaintiffs' claims might completely fail under the Section 203(o) defense.  *Hudson v. Butterball,* 2009 U.S. Dist.

6

LEXIS 104649 (W.D. Mo., Oct. 14, 2009).  Thus, the skill and knowledge required to overcome those defenses made this case particularly undesirable and risky to Plaintiffs' counsel. Absent particularized knowledge, skill and willingness to assume risk by Plaintiffs' counsel on behalf of the Plaintiffs and the class, the class would not possibly have obtained the substantial relief represented by the settlement.

**3.        The Customary Fee and Whether it is Fixed or Contingent (Factors 5 and 6):**

The common fund approach is the preferred method in the Tenth Circuit when the settlement calls for a *common fund*.  If the case is not settled by common fund, however, the Parties are free to seek payment of the attorneys' fees and costs under a lodestar basis (*i.e*. hours worked multiplied by hourly rate).  In the instant matter, the case was not settled by common fund and thus counsel is seeking fees on a reduced lodestar basis.   The hourly rates used to calculate fees on a loadstar basis for the work performed in this case by Mr. Brady ($400), by senior associates ($325), by junior associates ($225), and by paralegals ($80) are on the low end of reasonable rates for such services.  (Affidavit of Teresa A. Woody, Exhibit 2; Affidavit of Michael P. Downey, Exhibit 3).  Due to the fact that the individuals represented are typically not able to pay attorney fees, expenses or costs, the case was taken on a contingency fee basis. (Exhibit 4, pp. 1-2).   Thus, if unsuccessful, Plaintiffs' counsel would not be paid fees or reimbursed their out-of-pocket expenses; such risk demands a market premium.  *E.g., In re Oracle Sec. Litig.,* 131 F.R.D. 688, 693 (N.D. Cal. 1990) *see also* Exhibit 3, pp. 3-4.  The reasonableness of the rates used to calculate the loadstar herein is confirmed by a recent survey conducted in *Missouri Lawyers Weekly*, March 15, 2010, Vol. 24, no. 11, which revealed an average hourly  rate for  employment attorneys of  between $275-$425/hour (this range includes both associates and partners).  It follows that the hourly rates used for the loadstar calculation

herein is reasonable.   Moreover, the fee amount being requested is based on a substantial reduction of the actual amount of time expended in the case and, as such, Plaintiffs' counsel believes the request is fair.

### 4.     Novelty/Difficulty of Issues (Factor 2):

The primary issue in this litigation was the complex determination of whether Defendant unlawfully failed to pay Plaintiffs for time spent donning and doffing uniforms and for time related thereto, including pre-shift and post-shift walking time and pre-shift waiting time. In its Answer, Defendant denied Plaintiffs' material factual allegations and asserted an array of affirmative defenses, most notably that the union serving as Plaintiffs' collective bargaining representative had acquiesced to a "custom and practice" whereby time spent by employee "changing clothes …at the beginning [and] end of each workday" was excluded from compensable time under 29 U.S.C. § 203(o) (hereafter the "Section 203(o) defense").

During three and a half years of litigation, the Parties conducted extensive factual investigation regarding Plaintiffs' allegations, including written discovery, the exchange of thousands of pages of documents and data, numerous depositions and a time study of Defendant's facility.   In addition to their factual investigations, the Parties also undertook considerable legal analysis of various issues implicated in this case. In particular, the Parties scrupulously analyzed the application and scope of the Section 203(o) defense and the Parties' respective risks related to uncertainties thereto.  Defendant took the position that Section 203(o) unquestionably applied; Defendant contended that given that the class of employees at issue had not been paid for time related to on-site donning and doffing for decades while represented by a union, a "custom or practice" of such time being non-compensable would easily be shown. Plaintiffs contended that despite a Section 203(o) defense, Plaintiffs would still be entitled to

certain post-donning pre-shift walking time, pre-doffing post-shift walking time, and post-donning pre-shift waiting time. As to the compensability of such time, the Parties acknowledged that conflicting caselaw authority exists.  Compare *Adair v. ConAgra Foods, Inc.,* Case No. 09-0018-DW (W.D. Mo., Dec. 2, 2010) (donning and doffing were non-compensable activities under Section 203(o) defense; donning and doffing could nonetheless amount to "principal activities" respectively triggering the beginning and the end of the "continuous workday" and if so, post-donning and pre-doffing walking time would be compensable activities) with *Hudson v. Butterball,* 2009 U.S. Dist. LEXIS 104649 (W.D. Mo., Oct. 14, 2009) (given that donning and doffing were non-compensable under Section 203(o) defense, post-donning walk time and pre-doffing walk time were also excluded from compensable time).

The Parties also acknowledged respective risks as to a *de minimis* defense concerning the amount of daily walking and waiting time at issue. Compare *Saunders v. John Morrell Co.,* 1 WH Cases 2d 885 (N.D. Iowa 1992) (*de minimis* defense failed as to food processing employees regularly spending approximately three minutes a day cleaning equipment at the end of each shift) with *Lindow v. United States,* 738 F.2d 1057 (9th Cir. 1984) (seven to eight minutes of pre-shift time was *de minimus*, especially where employees often engaged in no work-related activities during that time).  As part of its *de minimis* defense, Defendant contended that the post-donning pre-shift waiting time did not constitute "work time" for purposes of the FLSA. Plaintiffs contended that such pre-shift wait time was integral to employees being "shift ready" after they donned uniforms in often crowded locker rooms. Compare *Lindow,* 738 at 1063-64 (*de minimis* defense applied where employees did not engage in work-related activities during much of the seven to eight minutes of pre-shift time at issue) with *Vega v. Gasper*, 36 F.3d 417, 426-27 (5th Cir. 1994) (case remanded to determine whether pre-shift wait time predominantly benefited

employer by assuring that work shifts would start promptly, rendering it a compensable principal activity).

Therefore, counsel respectfully suggests that the time expended litigating this matter was merited and the hourly rates sought are fair and reasonable in light of the intricacies of this case and the legal hurdles that Plaintiffs' counsel overcame.

**5.      Skill Required and Attorneys' Experience, Reputation and Ability (Factors 3 and 9):**

Large scale wage and hour cases are complicated and time-consuming matters.  Very few firms in the Kansas City area litigate these types of claims.  Any attorney undertaking these types of cases must be prepared to make tremendous investments of time, energy, and financial resources in order to appropriately pursue them.  Due to the nature of FLSA litigation, attorneys handling these cases must also be prepared to make these investments with the very real possibility of ultimately obtaining no attorney fees or recovery of costs expended.  This type of risk is outside the scope of risk most attorneys and firms can and are willing to handle.

Furthermore, Plaintiffs' counsel has the skill, experience, and ability to litigate these types of claims.  K.C. Connealy has more than seven years of experience representing clients in a wide variety of individual and class action litigation. Mr. Connealy worked as an attorney for over five years with the highly respected Kansas City litigation firm of Walters Bender Strohbehn & Vaughan, P.C.  While at that firm, Mr. Connealy represented both plaintiffs and defendants in the state and federal courts of Kansas and Missouri where he was first or second chair on a number of trials.  Mr. Connealy also gained significant class action experience working on multi-district litigation cases, in particular *In re Motor Fuel temperature Sales Practices Litigation, MDL 1840* in the District of Kansas.  Mr. Connealy then moved to Brady & Associates and has used his significant class action experience to represent plaintiffs in class and

collective actions to enforce their FLSA and employment rights.  Mr. Connealy has been a presenter for both Kansas and Missouri CLE employment seminars and is a member of the National Employment Lawyers Association.

Mark Kistler has fourteen years of experience litigating labor, employment and employee benefits matters.  After completing a two-year clerkship with the Kansas Court of Appeals in 1997, Mr. Kistler was an associate for two years with Blake & Uhlig, a highly respected law firm in Kansas City, Kansas, focusing on union-side labor law, ERISA, and employment law matters. While at Blake & Uhlig, Mr. Kistler performed substantial work on two FLSA collective actions, one in Iowa and one in Nebraska.  From 1999 to 2008, Mr. Kistler was a member of another highly respected Kansas City law firm, Arnold, Newbold, Winter & Jackson, focusing on ERISA litigation and compliance, union-side labor law and various employment law matters, including second-chairing a jury trial in a WARN Act class action in Arkansas.  Mr. Kistler was made a shareholder of Arnold, Newbold, Winter & Jackson in 2008.  From 2008 to 2009, Mr. Kistler prosecuted complex ERISA class actions with the highly respected law firm, Schlichter, Bogard & Denton, in St. Louis.  Since returning to Kansas City, Mr. Kistler joined Brady & Associates in December of 2010, where Mr. Kistler has focused his practice almost exclusively on prosecuting wage and hour collective and class actions. Mr. Kistler has presented local seminars on wage and hour issues and has earned a superior reputation among his peers.

Both Layne Aingell and Kathy Corcoran satisfy the requirements established by the Kansas Bar Association to perform work as a "legal assistant/paralegal." Ms. Aingell earned her post-secondary paralegal certificate from Johnson County Community College on December 17, 2007.  Ms. Aingell therefore has satisfied "Standard I" to perform paralegal work.  Ms. Corcoran has accrued more than five years of law-related experience under the supervision of an attorney,

11

including more than one year of in-house training as a paralegal while at Brady & Associates. Ms. Corcoran therefore has satisfied "Standard III" to perform paralegal work.

Heather Lake has over nine years of experience as an employment law attorney. She has represented both defendants and plaintiffs on various matters including discrimination/retaliation claims, compliance issues, severance, and wage and hour class and collective actions under state and federal law. Ms. Lake enjoys a stellar reputation among her peers, and was active in the national and local chapters of the National Employment Lawyers Association prior to her recent acceptance of a position with the esteemed firm of Constangy, Brooks & Smith, LLP in Kansas City, Missouri.

Mike Hodgson has been practicing law since 2003. After two years of working primarily in tort litigation, he joined Brady and Associates in 2005. Since that time, Mr. Hodgson's practice has focused primarily on prosecuting wage and hour class and collective actions under state and federal law. Mr. Hodgson has a superior reputation among his peers. Like Mr. Brady, he is active in the national and local chapters of the National Employment Lawyers Association. Since January of 2011, Mr. Hodgson has been practicing law as the principal of The Hodgson Law Firm.

The firm of Brady & Associates has actively prosecuted complex wage and hour and class and collective actions for the past eleven years. Brady & Associates consistently works with many of the nation's top law firms as lead and/or co-counsel on wage and hour class and collective actions. Michael Brady, principal of Brady & Associates, has successfully litigated against some of the nation's largest and most sophisticated employers. For example, Brady & Associates has been lead counsel in wage and hour class actions against Lowe's Home Centers, Case No. 2002-cv-02509 (D. Kan.), Capital One Home Loans, Case No. 2007-cv-02282 (D.

Kan.), General Nutrition Corporation, Case No. 2006-cv-02330 (D. Kan.), and Parsons

Construction, Case No. 2006-cv-04281 (W.D. Mo.).  Mr. Brady has presented seminars on Fair

Labor Standards Act issues at regional conferences, and enjoys an active role in the employment

law community. He is an active member in the national and local chapters of the National

Employment Lawyers Association, Tax Payers Against Fraud, as well as the Earl E. O'Connor

American Inn of Court, and the KCMBA Federal Courts Advocates Section.

The reputation, ability, and skill of Brady & Associates were indispensable in reaching

this settlement for the benefit of Class Members, which supports the reasonableness of the fees

sought herein.

### 6.      Time and Labor Required (Factor 1):

As set forth previously, Plaintiffs' counsel engaged in necessary and reasonable work in

prosecuting this matter for which they will ultimately not be compensated.  This case involved

complex claims that required an extensive amount of discovery, coupled with the fact that this is

an FLSA action which required a significant amount of briefing causing the time expended by

Plaintiffs' counsel to be great.  Plaintiffs' counsel is simply seeking to receive compensation for

their work and reimbursement for the costs associated with this action.  As set forth above,

counsel negotiated the amount due for the time expended in this action during mediation and in

the spirit of compromise agreed to receive less than their actual fees.  The Parties negotiated this

as part of the settlement in the spirit of the U.S. Supreme Court and the District of Kansas'

direction under Local Rules.

### 7.      More Time Will be Invested:

It is important to remember that this is counsels' only opportunity to be awarded fees for

the work on this case.  However, Brady & Associates' work will continue after this application

without any compensation.  As an example, there will be inquiries from the class members regarding the terms and consequences of the settlement and the computation and payout of the settlement.  Counsel will be performing this work without any additional compensation.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter the Order Granting Approval of Counsels' fee and cost request.

Respectfully submitted,

*s/ Michael F. Brady*
Michael F. Brady        KS #18630
BRADY & ASSOCIATES
10901 Lowell Avenue, Suite 280
Overland Park, KS 66210
Tel: (913) 696-0925
Fax: (913) 696-0468
brady@mbradylaw.com
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 13, 2012, the foregoing was electronically filed with the Clerk of the Court via the CM/ECF system, which will send notice of the filing to all counsel of record.

*s/ Michael F. Brady*
Michael F. Brady